JOHN BURGHER, Respondent, v. WABASH RAIL-ROAD COMPANY, Appellant.

St. Louis Court of Appeals, June 22, 1909.

1. **COMMON CARRIERS: Contracts of Affreightment: Limiting Common Law Liability: Consideration.** A common carrier may, in its contract of affreightment, limit its common law liability, but a provision to that effect must be supported by a sufficient consideration, independent of the consideration of transportation alone.

2. ———: ———: ———: ———: **Evidence.** A reduced freight rate in such case is sufficient consideration for limiting the common law liability, and a recital in the contract that the freight is shipped at a reduced rate is *prima facie* evidence of the fact.

3. ———: ———: ———: ———: ———. But such recital in the contract may. be contradicted by evidence going to prove that a full rate was charged and paid.

4. ———: ———: ———: **Notice of Claim.** A provision in a shipping contract that a claim for loss or damage to the freight shall be presented within a given time, as a condition precedent to the claimant's right to sue for such damage, is by some authorities held not to be a limitation of the carrier's common law liability; but, under the rule in this State, it is held to be a limitation upon the common law liability of the carrier and must be supported by a consideration in order to be valid.

5. ———: ———: ———: **Consideration.** Where the rules and shipping contract of a railroad company provided that a shipper of live stock should not be allowed free transportation for more than three care-takers with each shipment of eleven cars or more, and a shipper, sending in one shipment, thirteen carloads of cattle, shipped some of them in the names of his relatives and employees and thereby evaded the rules so as to send seven care-takers with the shipment, this did not amount

to a consideration for a stipulation in his dontract of affreightment limiting the carrier's common law liability; such an arrangement not having entered into the negotiations of the parties as an inducement to the shipment.,

6. ————: ————: Pleading: Variance. In an action against a railroad company by the shipper of cattle, for damage to the cattle, caused by a breach of the defendant's common law obligation to transport the cattle within a reasonable time, evidence of an express agreement between the plaintiff and the defendant, whereby the defendant agreed to furnish a special train, sanded and bedded for the purpose of shipment, and of a violation of such agreement, was improperly admitted and irrelevant to the issue; the action being one in tort for the violation of the defendant's common law duty, the plaintiff could not recover for breach of a contract to furnish bedded cars.

Appeal from Scotland Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

REVERSED AND REMANDED.

*N. M. Pettingill* and *Higbee & Mills* for appellant.

1. There is no averment in the petition that defendant failed to furnish the cars within a reasonable time after application made for them, or that there was an agreement to furnish bedded cars, or that cars were to be furnished at any particular time, or to deliver the stock for any particular market. The court erred in overruling defendant's objection to the question asked of plaintiff as to "what was your arrangement?" The pleadings admit, and the evidence shows the cattle were shipped under written contracts; there is no pretense there was any fraud or imposition in procuring these; plaintiff had been accustomed to sign them for twenty-seven years. Hence, the court erred in permitting proof of prior negotiations and arrangements for the shipment of these cattle; or that cars were to be thirty-four feet long, bedded and sanded, or that the stock was to be shipped at any particular time for delivery for any particular market. This character of evidence was not

relevant to any issue, and was prejudicial. "The written contracts are conclusively presumed to merge all prior negotiations and to express the final agreement of the parties." Crim v. Crim, 162 Mo. 553, quoted in Catterlin v. Lusk, 98 Mo. App. 187, and in Leicher v. Keeney, 98 Mo. App. 405; Hendricks v. Vivion, 118 Mo. App. 422; Holten v. Railroad, 61 Mo. App. 208; Railroad v. Cleary, 77 Mo. 637, holding that shipper cannot resort to prior parol negotiations to vary them. Welsh v. Edmisson, 46 Mo. App. 286. The contracts, then, were supported by a valuable consideration, which it was not necessary to express in the contracts. Halsa v. Halsa, 8 Mo. 303, 307; Ivory v. Murphy, 36 Mo. 540; Smith v. Shell, 82 Mo. 218; Harrington v. Railroad, 60 Mo. App. 226; Liebke v. Knapp, 79 Mo. 26; O'Day v. Conn, 131 Mo. 327; Bartlett v. Matson, 1 Mo. App. 155; Brick Co. v. Columbia, etc., Co., 86 Mo. App. 174; Ayer v. Bell Mfg. Co., 147 Mass. 52.

*C. C. Fogle, Claude C. Fogle* and *Earle E. Fogle* for respondent.

Respondent's instruction number one declared the law applicable to the case made by the pleadings and the evidence. Leonard v. Railroad, 54 Mo. App. 293, 57 Mo. App. 366; Sloop v. Railroad, 93 Mo. App. 605; Clark v. Railroad, 39 Mo. 185; Ranlain v. Railroad, 55 Mo. 167; Dawson v. Railroad, 79 Mo. 296. As a common carrier it was the duty of the defendant to deliver the stock at its destination within a reasonable time and without unnecessary delay. Levering v. Insurance Co., 42 Mo. 95; Reed v. Railroad, 60 Mo. 206; Rice v. Railroad, 63 Mo. 314; Davis v. Railroad, 89 Mo. 349-50; Witting v. Railroad, 101 Mo. 640. The defendant pleads in defense of plaintiff's cause of action, a contract, limiting its liability. This contract is no defense because it is invalid for the reason that it is not based upon a consideration. A contract without consideration is void. McFadden v. Railroad, 92 Mo. 343; Kellerman v. Rail-

road, 136 Mo. 193; Rogan v. Railroad, 51 Mo. App. 665; Duvenick v. Railroad, 57 Mo. App. 550; Conover v. Express Co., 40 Mo. App. 31; Richardson v. Railroad, 149 Mo. 324; Paddock v. Railroad, 60 Mo. App. 328.   A contract qualifying the responsibility imposed upon the carrier by the common law, must be supported by a valuable consideration apart from the acceptance of the property for carriage.   Rosenfield v. Railroad, 103 Ind. 121; German v. Railroad, 38 Iowa 127; Wehmann v. Railroad, 58 Minn. 22; Southerd v. Railroad, 60 Minn. 382; McFadden v. Railroad, 92 Mo. 343; Potter v. Sharp, 24 Hun 179; Gardner v. Railroad, 127 N. C. 293.

NORTONI, J.—This is a suit for damages alleged to have accrued because of defendant's breach of duty in respect of its obligation as a common carrier to transport plaintiff's cattle to Chicago, Illinois, within a reasonable time.   Plaintiff recovered in the circuit court and defendant prosecutes the appeal.

The evidence tended to prove that plaintiff contracted with the defendant to transport for him one hundred and eighty-eight head of cattle from Coatsville, Missouri, to Chicago, Illinois.   Several cars were employed in the shipment.   It appears transportation was had over the defendant's road and over the line of the Chicago, Rock Island & Pacific Railway Company, a connecting carrier with whom the defendant maintained a joint traffic arrangement.   There is an abundance of evidence tending to prove negligent delays on the part of the connecting carrier; that is, the Chicago, Rock Island & Pacific Railway Company.   Because of the negligence of that company, transportation was so impeded as to consume thirty-four hours for the carriage of the cattle from Coatsville, Missouri, to Chicago, Illinois, whereas from fifteen to eighteen hours was the usual and customary time consumed in such shipments, and that such was a reasonable time therefor.   Had the

cattle been transported in the usual time, they would have been placed upon the Chicago market at nine o'clock in the morning of December 2nd. As it was, they failed to reach there until late that night and were sold upon the following day. On December third, the day on which the cattle were sold, the market ranged about fifteen cents lower per hundredweight on the grade of animals involved in this controversy. It also appears that by reason of the delay in transit, the cattle had sustained an average shrinkage of about forty pounds per steer. This loss plaintiff sustained.

The principal defense invoked in the answer and relied upon by defendant arises out of a written contract of affreightment entered into between the parties with respect to the transportation of the stock. This defense pertains to a stipulation of the contract to the effect that plaintiff should be precluded from asserting any claim for damages which might accrue to him thereunder unless the claim therefor should be made in writing and delivered to the freight claim agent of the defendant at its office in the city of St. Louis within ten days from the time the stock was removed from the cars. It appears no written claim or notice whatever on account of the loss or damage referred to was made within the time limit. There is no evidence tending to prove a waiver of the stipulation requiring notice on the part of the defendant or any of its agents. Plaintiff accompanied his cattle to the market and was fully aware at the time of his loss and what induced it. The trial court proceeded as though the stipulation of the contract in respect of the written claim and notice was invalid and referred the case to the jury, notwithstanding its non-observance. This course was pursued, no doubt, on the theory that there appeared no independent consideration to support the stipulation requiring claim and notice within the time specified. It is argued here on the part of defendant that the stipulation requiring claim and notice within ten days is a valid

and reasonable provision of the contract of affreight-
ment even though no independent consideration for it be
shown.   Contra to this, plaintiff insists that although
it may be a reasonable provision, such stipula-
tion is without avail unless supported by a sufficient
consideration, separate and apart from the considera-
tion which is had for the transportation.   It is true a
common carrier is not permitted to limit its common
law liability as insurer except upon a sufficient, inde-
pendent consideration.   Under such circumstances, dim-
inution of the risk assumed by the carrier is a sufficient
consideration, so far as it is concerned.   However, it is
the duty of the common carrier to carry without any
contract limiting its liability, and it may be compelled
to do so when compensation for the service is tendered.
Therefore a mere agreement of the carrier to transport
does not furnish a consideration for the agreement to
limit its common law liability.   In order to bind the
shipper in such cases, a sufficient consideration, inde-
pendent of that for the transportation alone, must ap-
pear.   A reduced rate of freight is a proper considera-
tion and is that usually employed as an inducement for
such contracts.   [McFadden v. Railroad, 92 Mo. 343;
Kellerman v. Railroad, 136 Mo. 177; s. c., 68 Mo. App.
255; Mires v. St. L. & S. F. Ry. Co., 134 Mo. App. 379,
114 S. W. 1052; 1 Hutchinson on Carriers (3 Ed.), sec.
475; 5 Am. and Eng. Ency. Law (2 Ed.), 298; 4 Elliott
on Railroads (2 Ed.), sec. 1504, 1500.]

The contract of affreightment in the present in-
stance contained a recital to the effect that a reduced
rate of freight was granted to this plaintiff and in con-
sideration thereof, he acceded to the stipulation men-
tioned along with a number of other provisions therein
contained.   There is no doubt that the recital of a re-
duced rate of freight to that effect in the contract is
prima-facie evidence of that fact and sufficient to sup-
port a verdict where nothing to the contrary appears.
[McFadden v. Railway, 99 Mo. 343; Mires v. St. L. &

S. F. Ry. Co., 134 Mo. App. 379, 114 S. W. 1052.] However, when the written contract shows a consideration not contractual in its nature, as distinguished from mere recital to that effect, it is not conclusive on the parties. In such circumstances, it is competent to show by parol that the consideration was other than or different from that recited, or that in fact and in truth, there was no consideration whatever for the contract. [McFadden v. Railway, 92 Mo. 343; 6 Am. and Eng. Ency. Law (2 Ed.), 767; 1 Hutchinson on Carriers (3 Ed.), sec. 475.] In accord with this doctrine, plaintiff was permitted to and did give evidence to the effect that no reduced rate of freight whatever was granted to him with respect to the shipment involved. He said that he paid twenty-two cents per hundredweight as freight charges from Coatsville to Chicago, and that this rate was the usual and regular rate for such transportation. His evidence in this respect is uncontroverted in the record. It therefore appears that nothing other than the mere agreement to transport the shipment within a reasonable time was given or granted to the plaintiff as an inducement for him to accede to the stipulation mentioned, and for this he paid the regular rate. This appearing, it is essential to determine the validity of the stipulation requiring presentation of claim and notice to defendant's agent within ten days after the loss accrued, even though it is unsupported by a consideration separate and independent from the agreement to transport the cattle. To this end, we have examined many cases and standard authorities. As a result of this investigation, we ascertain that such stipulations have been generally upheld, even though no separate, independent consideration was given to support them. The theory of the authorities, generally speaking, is to the effect that if the contract in that respect is just, in view of the circumstances of the particular case in judgment, such stipulations are sustained as provisions which a carrier may insert in the contract as a reasonable regu-

lation of the shipper's right, notwithstanding its common law obligation to carry upon a tender of proper compensation. The authorities referred to argue that instead of being a limitation upon the liability at common law, such stipulations amount to no more than a reasonable regulation touching the shipper's right or a regulation going to the remedy and as such, they are enforced even in negligence cases, if otherwise reasonable and just in the particular circumstances of the case. [Rice v. Railway, 63 Mo. 314, 319; Dawson v. Railway, 76 Mo. 514; Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556; Hatch v. Railway, 15 N. D. 490, 107 N. W. 1087; 4 Elliott on Railroads (2 Ed.), sec. 1512; 5 Am. and Eng. Ency. Law (2 Ed.), 321 and note; see also 325; 1 Hutchinson on Carriers (3 Ed.), sec. 442.] On the same theory, that is, on the theory that such stipulations do not operate a limitation upon the common law liability of the carrier, the authorities generally declare and sustain the proposition that no separate consideration, independent of that given for the transportation, is essential to render such stipulation valid. Numerous authorities assert the doctrine that notwithstanding the carrier's duty to receive and transport, it is reasonable and just that it should be allowed to interpose such a stipulation in regulation of the shipper's right to the end that the shipper should be required to present his claim before the avenues of investigation are foreclosed. It is said it prevents great injustice which may be perpetrated by the practice of presenting stale demands. And thus viewed, it is a reasonable regulation only of the shipper's right, and does not operate to limit the liability of the carrier, for the carrier is liable to respond in the full measure required by law if the shipper has asserted his claim in due time, as required by the stipulation. On this reasoning of the law, the following authorities assert and maintain the proposition that no independent consideration is essential to the validity of the stipulation in a shipping contract requir-

ing notice and claim to be made within any given time adjudged to be reasonable.     [Hatch v. Railway, 15 N. D. 490, 107 N. W. 1087; Crow v. C. & A. Ry. Co., 57 Mo. App. 135, 142; 5 Am. and Eng. Ency. Law (2 Ed.), 300; Moore on Carriers, 305.]     For reasoning from which such a conclusion may be fairly deduced, see also Express Co. v. Caldwell, 21 Wall. (U. S.) 264; 22 L. Ed. 556; Rice v. Railway, 63 Mo. 314; Wabash v. Black, 11 Ill. App. 465; 1 Hutchinson on Carriers (3 Ed.), sec. 442; 4 Elliott on Railroads (2 Ed.), sec. 1512.

However all of this may be, our own Supreme Court has accepted another view of the question in a case recently decided.     See George v. C. R. I. & P. Ry. Co., 214 Mo. 551, 113 S. W. 1099, 1101.     That authority is controlling on this court and by it the question is entirely foreclosed.     The doctrine of the case last cited is that instead of it being a reasonable regulation which a carrier may insert in the contract requiring diligence and dispatch on the part of the shipper, it is in fact a limitation upon the common law liability of the common carrier and unless supported by a separate and independent consideration, the stipulation requiring the claim and notice is wholly invalid.     See George v. Railway, 214 Mo. 551; 113 S. W. 1099.     For our views further on this question, see Libby v. Railway, 137 Mo. App. 276, 117 S. W. 659.     It appearing that no reduced rate was granted to the plaintiff in this case, the stipulation in the contract requiring him to give notice of his claim within ten days after the loss has accrued, is invalid and imposed no obligation upon the plaintiff which the defendant may enforce.

It appears the plaintiff shipped his stock in a number of defendant's cars, all on the same train.     Because of the considerable number of cattle, he desired several persons to accompany the shipment for the purpose of giving aid in looking after them while in transit.     The rules of the defendant railroad printed on the live stock

contract permits free transportation for three men only to accompany eleven cars or more. There were thirteen cars included in plaintiff's shipment. The rules also provide for free transportation for one man to accompany one car, but where eleven or more cars are shipped, three men only are entitled to transportation with the shipment. Plaintiff shipped two cars of cattle in his own name. That is to say, he took a contract of affreightment in his own name for two cars only. The remaining eleven cars he shipped under the names of six other persons, one his son, and the others probably his employees. The contracts for the different cars were executed by defendant in the names of the six several persons who accompanied the plaintiff and the shipment, and in virtue of these contracts, transportation was afforded to six persons other than the plaintiff. As stated, they accompanied the shipment for the purpose of rendering services to plaintiff in looking after the cattle. However, this feature of the matter is unimportant. The argument is to the effect that by causing shipping contracts to be taken in the names of the several parties referred to, plaintiff procured the benefit of free transportation from Coatsville to Chicago, for four men more than he was entitled to under the rules and that such transportation was equal in value to a considerable sum of money. It is argued that therefore, even though no reduced rate of freight was given to the plaintiff, he received this benefit from the defendant company in the transaction for which he rendered no compensation and that it should be treated as a consideration sufficient to support the stipulation in the shipping contract requiring plaintiff to give notice of his loss within ten days after it accrued. We are not impressed with this argument. If plaintiff imposed upon the defendant and procured transportation for a number of men to which he was not entitled, that matter is entirely foreign to the question under consideration. Whether the defendant has a remedy against plaintiff

on that score, it is unnecessary to consider at this time. Suffice it to say that such additional transportation was no element of the consideration which induced plaintiff to execute the stipulation requiring notice and claim within ten days.   The consideration of a contract is said to be the reason which moves the contracting parties to enter into the contract.    [2 Blackstone's Com., 443; 6 Am. and Eng. Ency. Law (2 Ed.), 672.] This, of course, implies mutuality and that the parties have mutually contemplated the matter of consideration passing between them; the one assenting and agreeing to pay the price or exchange the article or forego the right, which the other, for an equivalent, or what is deemed in law, an equivalent, given on his part, accepts the same upon the precise terms proffered.   The very fact of a contract between the parties implies a meeting of the minds.   Without such, there is no contract. There must be a coming together of the minds upon a common ground of mutual understanding of facts and of the subject-matter, and the subject-matter of the contract comprehends the consideration passing from one party to the other.   It therefore appears that, interwoven with the consideration of the contract is the doctrine of mutuality, and this doctrine requires that both parties must understand and assent to the same subject-matter, consideration included.   [7 Am. and Eng. Ency. Law (2 Ed.), 113, 114.]   Now there is not a word in the proof in this case tending to support the argument that plaintiff and defendant contemplated transportation of the several persons referred to should be considered as an inducement or consideration for the plaintiff to stipulate that he would give the required notice of, or make a claim for, his loss within ten days after it occurred, or as a consideration for any other stipulation contained in the contract.   To be an appropriate matter of consideration, it should have been so contemplated and understood by the parties at the time.   The

circuit court did not err in referring the case to the jury on this score.

As before stated, the petition counts on a breach of the defendant's common law obligation to transport the cattle within a reasonable time. There is no allegation therein pertaining to the breach of any contract to deliver or bed the cars for shipment. The cause of action relied upon is entirely that arising from the alleged breach of the obligation imposed upon the defendant common carrier, by law. Plaintiff, over the objection and exception of defendant, was permitted to prove that he entered into a verbal agreement with the defendant's freight agent, several days in advance of the shipment, to the effect that defendant would furnish plaintiff with a special train for his cattle and that the cars thereof would be sanded and bedded by defendant so that he might immediately load the same therein for transportation to the junction point of the Chicago, Rock Island & Pacific Railway Company and connect with the through train of the latter company for Chicago. Plaintiff and his witnesses also testified, over the objection and exception of defendant, that when he was notified the cars were present for the shipment, they were neither bedded nor sanded, and that he was thereby delayed in loading his cattle for several hours, sufficient to defeat his purpose of making connections with the Chicago, Rock Island and Pacific train referred to. It appears the defendant set the cars mentioned upon the side track at Coatsville at about eleven o'clock the night before the cattle were shipped, and that plaintiff, who resided about three miles in the country, was notified at five o'clock the following morning the cars were in waiting. However, upon learning that the cars were not bedded with straw, plaintiff refused point-blank to make the shipment therein. Some delay was occasioned on this account. He afterwards concluded to bed the cars himself and to ship the cattle on that day. Several hours were consumed in hauling straw

and bedding the cars.    The loading of the cattle was
finally completed between twelve and one o'clock on
the first day of December, whereas had it not been for
the time consumed in bedding the cars, they might have
been loaded in the early morning and in time to have
made a connection with the Chicago, Rock Island and
Pacific train at Belknap, Iowa.    This testimony was
incompetent and should have been excluded.    As stated,
the cause of action relied upon in the petition does not
count upon a breach of contract with defendant to fur-
nish bedded cars, but on the contrary, it proceeds en-
tirely upon the defendant's common law liability to
transport within a reasonable time after it received the
cattle.    It is true that in the concluding lines of the
petition, reference is made to the fact that defendant
was delayed in loading the cattle by the failure of de-
fendant to furnish cars properly bedded, and that the
plaintiff was compelled to pay out $68.90 for the pur-
pose of properly bedding such cars, for which amount
recovery is asked.    However, this matter sounds in
tort.    The two certainly may not be joined in one and
the same count of the petition.    If defendant entailed
a loss upon plaintiff as a result of breaching a verbal
contract to bed the cars, that may afford him a remedy
*ex contractu* in another action.    On this question we
give no opinion.    It is sufficient for the present to de-
cide the precise question presented by the record; that
is, that the two causes, one in tort for the breach of the
common law obligation to transport within a reasonable
time, and the other, *ex contractu,* for breaching the ver-
bal contract, may not be commingled and relied upon
in the same count.

Now under the cause of action relied upon in the
petition, defendant's obligation to transport the cattle
within a reasonable time attached from the time the
cattle came into its possession for transportation and
the matter of the several hours' time consumed by plain-
tiff in bedding the cars before the cattle came into de-

fendant's possession, is wholly immaterial to its liability. The evidence referred to was therefore prejudicial in that it tended to show delay entailed by defendant operating a breach of what was said to be a verbal contract with it, not relied upon in the petition. There was no issue, whatever, joined between the parties in respect of any obligation on the part of defendant to bed the cars, and such proof was wholly foreign to the issue as to whether defendant had transported the cattle within a reasonable time after they came into its possession for the purpose.

Furthermore, the court submitted this testimony to the jury in the plaintiff's second instruction as a ground of liability sufficient to support a recovery. This was error indeed. In illustration of the manner in which the question was presented, we copy plaintiff's instruction number two. The words we italicize therein emphasize the objectionable theory pursued, which was wholly unauthorized by the pleadings.

"If the jury believe and find from the evidence that there was an unnecessary delay in the transportation of plaintiff's cattle from Coatsville, Missouri, to Chicago, Illinois and that such delay in transit was due to the negligence in the management or operation of the train of defendant by which said stock was taken out of Coatsville, Missouri, *or on account of the starting from Coatsville, Missouri, or to the negligence* in the management or operation of the train on the Chicago, Rock Island & Pacific Railroad, to which defendant delivered said cattle, and that because of said delay, plaintiff's cattle failed to arrive at the stock yards in Chicago, Illinois, in time for the market of December 2nd, 1903, and did not arrive at the stock yards, so as to be placed on the market at an earlier date than on the morning of December 3d, and that the market had declined at Chicago between the morning or forenoon of December 2nd, and the morning or forenoon of December 3rd, you will find for the plaintiff in such sum as

you may find he has been damaged by such delay, not to exceed in all the sum of $845.95, with interest thereon at the rate of six per cent per annum from the 4th day of October, 1904."

Now it appears from this instruction that the court authorized a recovery for plaintiff if the jury found that the transportation was delayed by the negligence of defendant in the management of its train or on account of starting from Coatsville, Missouri.   In view of the objectionable testimony above mentioned, the reference in the instruction to starting from Coatsville could have referred only to the defendant's negligent failure in not having furnished bedded cars and thus delayed the shipment by entailing the labor of bedding upon plaintiff before starting, for there is positively no word of testimony in the record that the shipment was delayed at all at Coatsville after the cattle were loaded; and on the facts in proof, it is clear the cattle were not received for transportation until they were loaded in the cars. In fact, it appears that immediately upon loading the cattle, between twelve and one o'clock of that day, the train departed for Belknap, Iowa, at which point the shipment was given into possession of the connecting carrier.   In truth, it appears this train had been in waiting at Coatsville for the shipment and for plaintiff to load his cattle from about five o'clock in the morning. This instruction was manifestly prejudicial in that it submitted to the jury an element of liability against defendant not competent under the pleadings and proof.

The judgment will be reversed and the cause remanded.   *Reynolds, P. J.,* and *Goode, J.,* concur.