J. A. BOTTS et al., Respondents, v. ST. LOUIS & HANNIBAL RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, June 8, 1915.

1. **COMMON CARRIERS: Carriage of Live Stock: Liability.** While, in order to establish liability against a carrier for injury to a shipment of live stock, it is not necessary to prove negligence on the part of the carrier by direct evidence, it is essential to show a state of facts or circumstances from which negligent conduct on its part may be inferred.

2. ———: ———: ———. A carrier is relieved of liability for failure to deliver live stock in good condition only by the act of God or the public enemy, the fault of the shipper, or the inherent vice of the stock.

3. ———: ———: ———. Where the negligence of a carrier contributes to cause injury to a shipment of live stock, the carrier is liable therefor, although the condition of the weather or the act of God is a contributory cause.

4. ———: ———: **Sufficienctly of Evidence.** In an action against a carrier for damages for the death of hogs shipped on a warm day, evidence that the hogs were sound and healthy when delivered to the carrier, that the car in which they were loaded was allowed to stand in its yards for some time, that twelve hogs, out of a shipment of eighty-three, were dead within four hours after they were loaded, and one died the next morning, together with opinion evidence, to the effect that the proportion of loss was unparallelled in that locality, and that, if the car had been kept moving, the hogs would not have died, was sufficient to warrant a finding that the carrier was negligent, notwithstanding it wet the car and furnished the hogs with water while the car was standing.

5. ———: **Limitations on Liability: Consideration.** A provision in a bill of lading, requiring the shipper to give the carrier notice of any claim on account of loss of or injury to the ship-

Botts v. St. Louis & Hannibal Railroad.

ment, as a condition precedent to a right of recovery, is invalid, unless supported by a separate consideration independent of the regular transportation charge.

6. ———: ———: ———. A recital in a shipping contract, that the shipment is made under the lesser of two rates which are held out to the public, will, in the absence of evidence to the contrary, and where it does not appear that the regular tariff rate was exacted, be regarded as sufficient, prima facie, to show an independent consideration for a limitation upon the carrier's liability.

7. ———: ———: ———: "Tariff Rate." A bill of lading, which required the shipper to give special notice of claims, recited, whereas the carrier transports live stock at less than its tariff rates when its liability is limited by contract, that it was agreed that the carrier would transport one carload of stock as per tariff and rules in effect on date of shipment, at the through rate of tariff per car, the same being a special rate less than the regular tariff rate applying on shipments not covered by the special conditions. The bill of lading mentioned no other tariff. *Held*, that the expression "tariff rate" meant the usual rate; and hence the bill of lading showed no reduction affording a consideration to give validity to the special condition requiring notice.

8. ———: Injury to Live Stock: Excessiveness of Recovery. In an action against a carrier for the death of hogs shipped, *held*, under the evidence, that the jury did not award a recovery for hogs dying after the shipment had passed beyond defendant's line.

Appeal from Audrain Circuit Court.—*Hon. James D. Barrett*, Judge.

AFFIRMED.

*Fry & Rodgers* and *J. D. Hostetter* for appellant.

(1) It is well settled that where a shipper sues two or more carriers under the provisions of Sec. 5446, R. S. 1909, he can only recover from the carrier through whose negligence the loss or damage occurred. Crockett v. Railroad, 147 Mo. App. 347; Wilburn v. Railroad, 148 Mo. App. 692. It will be noted in this case that the shipping contract read in evidence provided expressly

that the defendant, the St. Louis & Hannibal Railroad
Company only contracted and agreed to carry the ship-
ment to the end of its line, to-wit, Gilmore, Missouri,
and there to deliver the same to the Wabash Railroad
Company. This it had a perfect right to do. West-
ern Sash & Door Co. v. Railroad, 177 Mo. 641; Jones
v. Railroad, 115 Mo. App. 232; McLendon v. Railroad,
199 Mo. App. 128; Bank v. Railroad, 72 Mo. App. 82;
McCann v. Eddy, 133 Mo. 59. (2) The court erred in
refusing to give effect to the seven days' notice clause
in the shipping contract. This provision has been up-
held by our courts. Bellows v. Railroad, 94 S. W.
577.

*Fauntleroy, Cullen & Hay* for respondents.

This is a shipment wholly within the State. The
contract does not specify any rate, but recites that
the stock was shipped at tariff rates, and, under the
rule applied to shipments wholly within this State,
there is no consideration to support the agreement to
give notice and such a clause is void. Libby v. Rail-
road, 137 Mo. App. 287; Burgher v. Railroad, 139 Mo.
App. 70; Johnson Grain Co. v. Railroad, 177 Mo. App.
198; Holland v. Railroad, 139 Mo. App. 720; Creel v.
Railroad, 137 Mo. App. 31; Ficklin v. Railroad, 117 Mo.
App. 225; Leas v. Railroad, 157 Mo. App. 461.

NORTONI, J.—This is a suit for damages ac-
crued on account of the loss of several hogs in transit
through the alleged negligence of defendant, a common
carrier. Plaintiffs recovered and defendant prosecutes
the appeal. Since the appeal was perfected plaintiff
Trimble departed this life, and the case as to his in-
terests now stand revived in the name of his execu-
trix.

It appears that on March 21, 1907, plaintiffs Botts
and Trimble as copartners, consigned at Perry, Mis-

souri, the shipment of eighty-three fat hogs over defendant's line to Gilmore, Missouri, there to be delivered to the Wabash Railroad Company, a connecting carrier, for transportation to East St. Louis, Illinois. The shipment was delayed some in transit over defendant's line, but this is unimportant. Thirteen of the hogs were found to be dead on the following morning and the suit proceeds on the grounds of negligence for such loss. Both defendant St. Louis & Hannibal Railway Company and the Wabash Railroad Company were sued in the first instance as connecting carriers, but at the trial the court directed a verdict for the Wabash Railroad and submitted the case to the jury against the present defendant alone. In so far as this defendant is concerned, the transaction involves an intrastate shipment only, from Perry to Gilmore, Missouri, where delivery was made to the Wabash.

The evidence is, the hogs were loaded in a car on defendant's line at Perry, Missouri, about one o'clock in the afternoon, and were transported by it from thence to Oakwood, near Hannibal, on its line, where the car was set out to await the regular stock train later in the evening. About five o'clock defendant's regular stock train number 7 picked up the carload of hogs at Oakwood and twelve of them were found to be dead at that time. The weather was warm, though in the month of March, for it appears the thermometer ranged on that day between sixty-nine and ninety-three degrees, and it appears the car was wet, the hogs having been furnished water by defendant during the while.

It is argued there is no evidence of negligence on the part of defendant. It is true there is no pointed and direct evidence of particular acts of such, but the situation presented is extraordinary, in that it is unusual for so many hogs to die out of the total number of eighty-three in the car. There is evidence by stock men to the effect that if the car had been kept mov-

ing rather than standing so long at Oakwood in the heat, such fatalities would not have occurred.

Negligence may be inferred from circumstances attending the case and direct evidence to that effect is not essential. It appears the hogs were all healthy and in good condition when loaded at Perry at one o'clock in the afternoon, and in view of this the evidence appears to be sufficient to make a prima-facie showing of negligence on the part of defendant, for that, in the ordinary course of events, so large a number of hogs in good condition would not die in transit during so short a time, if due care were exercised on the part of the carrier.

In the case of inanimate freight, the common carrier is an insurer and the duty devolves upon him to deliver the goods intact at the point of destination; but there is an exception to this rule with respect to the shipment of live stock, which arises because of the inherent vice or propensities of the animals. Because of this exception, it is essential to show a state of facts or circumstances from which negligent conduct may be inferred on the part of the carrier, in order to affix liability against it. But, as before said, it is not essential to show positive acts of negligence and the circumstances attending the shipment may be such as to afford a fair inference of dereliction of duty on the carrier's part. In this view, it has heretofore been said by this court, in the case of a shipment of poultry, that, where it appeared the poultry was delivered to the carrier in good condition and after a comparatively short run delivered to the consignee with a large percentage of the poultry dead and that such death rate in shipments of like character was so extraordinary that its parallel could not be shown, the shipper made out a prima-facie case of negligent conduct on the part of the carrier so as to cast the burden of proof upon it. [See Hance v. Pacific Express Co., 48 Mo. App. 179.]

So, too, the Kansas City Court of Appeals declared in the case of a shipment of twenty-four horses, which were delivered to the carrier in good condition at Kansas City, and nineteen of them were found to be bruised on the following morning, upon arrival at St. Louis, two of which subsequently died, such facts alone would suffice as a prima-facie showing of negligence against the carrier so as to place the *onus* upon it of exculpating itself from fault. It was said that the jury might infer from these facts that the horses were injured as a result of negligent conduct on the part of the carrier and not from their own vicious propensities. [See Cash v. Wabash R. R. Co., 81 Mo. App. 109. See, also, Libby v. St. Louis, I. M. & S. R. Co., 137 Mo. App. 276, 117 S. W. 659.]

The evidence, as before stated, is that all of the hogs were in a healthy, sound condition when delivered into defendant's care at Perry, Missouri, about one o'clock in the afternoon, and that, at five o'clock on the same afternoon, twelve of them were found to be dead in the car standing on the track at Oakwood, thirty miles distant. Experienced stock men testified without objection that such was an unparalleled death rate in the shipment of like hogs in that locality and in this respect the condition revealed was extraordinary. While there is evidence that the hogs had been watered during the time and permitted to stand in a wet car during the heat of the afternoon, which was excessive for the time of year, yet, in view of all the facts and circumstances, it may not be said as a matter of law that there is nothing in the case from which the jury might infer negligent conduct on the part of defendant. No explanation is offered in defendant's evidence to exculpate it, save that it attributes the loss to the extreme heat which then prevailed; but obviously it should have exercised care with respect to that circumstance, which it appears was well known to all concerned, for, according to the evidence on the

part of plaintiffs, if the stock had not been permitted to stand a considerable while in the heat, the hogs would probably not have died. In the shipment of live stock and for failure to deliver in good condition, the carrier is relieved of liability only by the act of God, the public enemy, the fault of the shipper, or the inherent vice of the animal. It does not conclusively appear that the hogs came to their death solely from any one of these causes, and no one can doubt that if the loss occurred through the negligent conduct of the defendant contributing thereto, it will nevertheless be required to compensate it, though it appears the condition of the weather or the act of God contributed in part thereto as well. [See Gratiot Street Warehouse Co. v. Missouri, K. & T. R. Co., 124 Mo. App. 545, 102 S. W. 11.]

In its answer defendant pleads a special contract with plaintiff pertaining to the shipment, to the effect that it undertook to transport the hogs only to the terminus of its own line at Gilmore, Missouri, and also that this contract contains a provision to the effect that, in case of loss of or injury to any of the stock during the transit, notice shall be given to defendant's freight agent of any claim to be made on account thereof, within seven days thereafter. It does not appear that such notice was given and defendant invokes this provision of the contract in bar of a recovery; but obviously the matter is unavailing here, for there is no evidence whatever tending to prove that the contract of shipment was entered into for other than the usual tariff rates for such shipment—that is to say, there appears no separate or independent consideration for this provision in the contract. It was formerly the rule of decision in this State, as we understand the authorities, that such requirements in the shipping contract— that is, that the shipper should give notice within a specified time, which was reasonable in itself, of his purpose to lay claim to damages on account of the fault

of the carrier—was a reasonable regulation and valid, though no independent or separate consideration appeared therefor. [See Rice v. Railroad, 63 Mo. 314; Dawson v. Railroad, 76 Mo. 514.] But a more recent decision of the Supreme Court proceeds in a contrary view. In the case of George v. Chicago, R. I. & P. R. Co., 214 Mo. 551, 113 S. W. 1099, the Supreme Court treated such a stipulation, requiring notice of the claim to be given as a condition precedent to the right of recovery on the part of the shipper, as a limitation upon the common-law liability of the carrier and, therefore, wholly invalid unless supported by a separate consideration independent of the regular charge for the transportation of the freight. In other words, it was there declared that some concession, such as a reduced rate of freight or other consideration, must appear, in order to render it valid. We have had occasion to examine this question heretofore, and, in view of the Supreme Court decision last cited, declared the rule to be as stated—that is, that the stipulation requiring such notice is invalid as a limitation on the carrier's liability, unless a separate consideration appears therefor. [See Libby v. St. Louis, I. M. & S. R. Co., 137 Mo. App. 276, 117 S. W. 659; Burgher v. Wabash R. Co., 139 Mo. App. 62, 120 S. W. 673.]

But it is argued that, though there is no direct evidence of a reduced rate or other independent consideration, such sufficiently appears by the recital in the contract itself, in view of the fact that there is no evidence to the contrary. It is well settled that a recital contained in the shipping contract, to the effect that the shipment is made under the lesser of two rates which are held out to the public, will, in the absence of evidence to the contrary, be regarded as a sufficient prima-facie showing concerning the matter of a reduced rate or independent consideration for limitations upon the carrier's liability. [See McFadden v. Missouri Pac. Ry. Co., 92 Mo. 343, 4 S. W. 689.] But this

rule obtains only in those cases where it does not appear that the regular tariff rate was exacted.

The recitals of the contract invoked here are as follows:

"Whereas, the St. Louis & Hannibal Railway Company as a common carrier, transports live stock at less than its tariff rates when its liability is limited by contract as follows: It is mutually covenanted and agreed by and between the parties hereto: That said party of the first part will transport for the said party of the second part one carload of stock . . . as per tariff and rules in effect on the date of shipment at the through rate of trf. per car, from Perry, Missouri, Station, the same being a special rate less than the regular tariff rate applying on shipments not covered by the conditions and stipulations herein contained . . . to Gilmore, Missouri, Station."

It appears from this that no rate of freight whatever is mentioned in the contract except the tariff rate. It is stated the shipment is to be made at the "through rate of trf. per car from Perry, Missouri, Station, the same being a special rate less than the regular tariff rate." It has been pointedly determined by the Supreme Court in the case of Kellerman v. Kansas City, St. J. & C. B. R. Co., 136 Mo. 177, 34 S. W. 41, 37 S. W. 828, that the employment of the words "tariff rate" in the shipping contract signifies the regular lawful rate for such shipment, and nothing more nor less, and the same was declared, too, by the same court in George v. Chicago, etc., R. Co., 214 Mo. 551, 113 S. W. 1099, where the contract recited substantially the same as that above set forth.

In speaking of the words "tariff rate" employed in the shipping contract in the case last cited the court said:

"Therefore when the contract shows that that was the rate charged it was vain to recite therein that it

was 'less than the rate charged for shipments transported at carrier's risk.' "

This court, too, has heretofore declared, on the identical language employed in this shipping contract, that the language reciting the shipment was made for the tariff rate and that such rate was less than the regular tariff rate for shipments was insufficient to show prima facie a consideration of a reduced rate of freight for the shipment, because nothing appeared therein concerning the rate as to what it was and the recitation as to tariff rate suggests only the regular lawful rate.   [See Farmer's Bank v. St. Louis & H. R. Co., 119 Mo. App. 1, 95 S. W. 286; Keyes-Marshall Bros. Livery Co. v. St. Louis & H. R. Co., 113 Mo. App. 144, 87 S. W. 553; see, also, to the same effect Burns v. Chicago, etc., R. Co., 151 Mo. App. 573, 132 S. W. 1.]

It appears, therefore, that the requirement of the special contract concerning notice is unavailing, for that no separate consideration appears to support it.

. But it is argued the evidence shows that only twelve of the hogs died while in defendant's possession, and that, though thirteen of them were dead on reaching East St. Louis, only twelve were shown to have been dead before delivery to the connectin~ carrier, the Wabash Railroad Company at Gilmore, Missouri, which latter company was discharged from the case by peremptory instruction.   It is true that the evidence shows only twelve of the hogs died while in defendant's possession, but nevertheless the judgment given is authorized by the evidence.   It was admitted on the trial that none of the hogs which died weighed less than two hundred pounds.   The evidence is conclusive, and not denied, that the hogs were of the market value of $6.32½ per hundredweight.   This being true, by treating each one of the hogs that died as weighing two hundred pounds only they were of the value of $12.65 per head.   The value of twelve hogs at

$12.65 constitutes the total amount of $151.80. This is the precise amount of the verdict given by the jury and it is clear the evidence supports the finding. It would seem the jury awarded a verdict for the loss of the twelve hogs only.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.