D. D. SULLIVAN, Respondent, v. AMERICAN RAILWAY EXPRESS COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals.   Opinion Filed November 7, 1922.

1. **COMMON CARRIERS: Carrier of Live Stock: Pleading: Action Based on Common-Law Duty: Need not Allege Negligence.** Where plaintiff bases his cause of action against a common carrier of live stock on the carrier's failure to obey its common-law duty to deliver live stock safely and properly, he need not allege negligence as essential to his cause of action.

2. ———: ———: **Failure to Deliver Safely and Properly: Liability: Exceptions.** At common law, in the absence of special contract, the liability of a carrier is the same with respect to live stock

as to inanimate freight with certain additional exceptions as to live stock; such exceptions are that the carrier is not liable if its failure to properly and safely deliver in good condition was due to the act of God, the public enemy, the inherent vice or nature of the animal or its vicious propensities, or the fault of the shipper.

3. **APPELLATE PRACTICE: Evidence: Shipping Contract: Action Against Carrier: Shipper not Claiming More than Value Stated in Contract: Exclusion not Reversible Error.** In an action by a shipper against a common carrier for the value of a hog which died during transportation, where there was no claim by plaintiff that he was entitled to recover more than the value stated in the shipping contract, the refusal of the trial court to admit such contract in evidence was not reversible error on that ground.

4. **COMMMON CARRIERS: Carriers of Live Stock: Exceptions to Rule Making Carrier Liable for Failure to Deliver, etc.: Burden of Proof.** In an action by a shipper against a carrier of live stock for the value of an animal which had died during transportation, if the carrier seeks to relieve itself from liability by bringing itself within the exceptions with respect to live stock, that is that the carrier is not liable if its failure to properly and safely deliver in good condition was due to the act of God, the public enemy, the inherent vice or nature of the animal or its vicious propensities or the fault of the shipper, the burden devolves upon it to do so, and where the carrier produces evidence tending to bring it within any of such exceptions, then the duty would rest upon plaintiff to come forward with evidence showing the contrary, in which event it would be a question for the jury as to whether or not the carrier had breached its common-law duty to deliver the live stock in a safe and sound condition.

5. ———: ———: **Negligence: Action Based on Negligence of Carrier: Shipper Must Prove Negligence.** Where a live stock shipper bases his cause of action against a carrier upon the negligence of the carrier and not on the carrier's failure to obey its common-law duty to safely and properly deliver the live stock in a safe and sound condition, the burden is upon him to prove such negligence to recover.

6. ———: ———: ———: **Stipulation Exempting Carrier from Liability Except for Negligence: Carrier not Relieved from Liability.** A common carrier of live stock cannot relieve itself from its common-law liability as an insurer for failure to deliver live stock in a safe and sound condition, by a stipulation in the shipping contract wherein it was provided that the carrier shall not be liable for injury or loss unless caused by its negligence, and that

the shipper should prove such negligence, such provision in the contract not being a reasonable regulation which the carrier could enforce.

7. ———: ———: **Vicious Propensities of Animals: Carrier not Relieved from Liability for Death Unless Sole Cause.** Vicious propensities or inherent vices of an animal which died during transportation would have to be the sole cause of itr death to relieve the carrier of liability, and if such exceptions concurred with the carrier's failure to discharge its common law duty, and caused the death, it would not be relieved from liability.

Appeal from the Circuit Court of Audrain County.—
*Hon. Ernest S. Gantt*, Judge.

AFFIRMED.

*A. C. Whitson* for appellant.

(1) The shipment being an interstate shipment, the carrier was not liable as an insurer of the freight, the hog in question, but was only liable for any loss occasioned by its negligence, in the absence of a showing of negligence on the part of the carrier, it is relieved from all responsibility for injury or death of animals in shipment as may occur to them, or in consequence of the vitality of the freight. Adams Express Co. v. Croninger, 226 U. S. 491; Bragg v. Payne, 235 S. W. 148; 10 C. J. 122, sec. 149, 10 C. J. 124, notes 53 and 54; Winn v. Express Co., 140 N. W. 427; Bland v. C. & A. R. R., 232 S. W. 232; 4 R. C. L. 963; R. R. Co. v. Prescott, 36 Sup. Ct. 469. (2) As to animate freight the carrier is not an insurer either under the State or Federal law, and it is not liable for loss or injury to live stock unless it fails to perform its public duty as a carrier and is negligent in the transportation thereof. See cases in Point 1; Cash v. Wabash, 81 Mo. App. 109; Hance v. Express Co., 48 Mo. App. 179; Libby v. Railway, 137 Mo. App. 276, 218; Botts v. Railway, — Mo. App. 678, 681. (3) Where injuries are received by animals *in transit*, or they die, and such injuries or death may have been caused

from their inherent nature or by the negligence of the carrier, there is no presumption the injuries were due to negligence of the carrier. Where it appears the carrier has performed the duties incumbent on it, the loss of the stock is presumed to be due to their natural propensities or in consequence of the vitality of the freight. 4 R. C. L. 963; Bragg v. Payne, 235 S. W. 148; Cash v. Wabash, 81 Mo. App. 109; Hance v. Express Co., 48 Mo. App. 179. (4) The carrier has a right by contract to limit its obligations as a carrier, except as to its negligence. It may limit or exclude its liability as to loss by heat, or by smothering or as to vices of the animals, or as to other cases, where it is not negligent. The contract as entered into becomes the law as to the shipment, and the rights and liabilities of the parties are determined thereby. Adams Express Co. v. Croninger, 226 U. S. 491; Winn v. Express Co., 140 N. W. 427; Southern Ry. v. Prescott, 36 Sup. Ct. 469; Donovan v. Express Co., 265 Mo. 305; Hart v. Railway, 5 Sup. Ct. 151. (5) In an interstate shipment the burden is on the plaintiff to prove his case and that the carrier was negligent. The plaintiff must allege and prove that the carrier was negligent. Bland v. C. & A., 232 S. W. 232; Southern Ry. v. Prescott, 36 Sup. Ct. 469; Bragg v. Payne, supra; Howell v. Hies, 236 S. W. 880. The burden of proof is a matter of substance and rests with the plaintiff. (6) Where it appears that the carrier has not failed to perform its public duty, and the evidence in the record shows no rough handling, or negligence on the part of the carrier, the court will reverse the case without remanding. Bland v. C. & A., supra; Bragg v. Payne, supra.

*Rogers & Buffington* for respondent.

(1) Carrier's common-law liability is the same under both Federal and State law. Galveston, etc., Ry. Co. v. Wallace (U. S.), 32 Sup. Ct. 207; Cudahy Packing Co. v. Railway, 193 Mo. App. 572; Ficklin v. Railway, 117 Mo. App. 228; Singer v. Express Co., 219 S. W. 662;

Collins v. Railway Co., 181 Mo. App. 213; 4 R. C. L., p. 950, notes 4, 5 and 6; Chicago, etc., Ry. Co. v. Collins, 39 Sup Ct., (U. S.) 189.  (2)  A common carrier cannot limit its common-law liability by contract unless a consideration is given therefor.  George v. Railway, 214 Mo. 55.  (3)  A shipper is not required to base his action on negligence for loss and damage to live stock. Boyd v. Express Co., 211 S. W. 702.

NIPPER, C.—This is an action against a common carrier.  Plaintiff seeks to recover for the value of a hog, shipped by him from Martinsburg, Missouri, to Bartlett, Texas.  The action originated before a justice of the peace.  The statement filed by plaintiff does not allege any negligence on the part of defendant, but bases the action upon defendant's common-law liability as an insurer.  Defendant's answer, in addition to a general denial, sets up the contract of shipment, wherein it is provided that the carrier shall not be liable for injury to or loss of the animal, unless caused by its negligence.

Plaintiff recovered, and defendant appeals.

Plaintiff's reply alleges a failure of consideration for the limitations specified in said contract of shipment.

The evidence offered on the part of the plaintiff discloses that this hog was properly crated, delivered to defendant in good condition, and when it arrived at its destination, it was dead.  The crate in which it was shipped was made of 1 x 4 slats, and had a solid bottom on which was attached a portion of straw.

The evidence offered on the part of the defendant was that the hog was in good condition and well cared for until just before its arrival at Dallas, Texas, at about 8:45 a. m. on March 22, 1919, the shipment having been made on March 20th of the same year, at which time the hog in question, weighing about 360 pounds, broke out of the crate.  It was replaced in the crate several times, but broke out each time.  It appeared restless, nervous, and angry.  It was described by some witnesses as "frothing at the mouth," and attempted to bite and tear up

articles in the express car in which it was housed. It died at Waco, Texas, before it reached its destination. There was evidence offered on the part of the defendant, to the effect that the death of the hog was caused by its vicious propensities. The evidence also discloses that it had been given no water from Dallas to Waco—a three hour run, and that while some water was brought to the car at Waco, Texas, the hog was dead before any attempt was made to give it any water, although the crate in which it was enclosed was provided with a drinking pan used by shippers when shipping stock under circumstances detailed here.

The evidence discloses that, at the time the hog was delivered to the express company at Martinsburg, it was in good health, the State Veterinary Department having passed upon its condition and issued a certificate to this effect.

Defendant offered in evidence the contract of shipment, but its admission in evidence was refused after objections made by plaintiff.

Mr. Williams, defendant's agent at Martinsburg, testified that there was no reduced rate of any kind given to plaintiff with reference to this shipment, but that the regular approved rate was charged.

The court submitted the case to the jury upon the theory that the defendant was an insurer of the property, with the exception of the inherent vice, vicious propensities, sickness or disease of the animal, or fault of the shipper.

Defendant's appeal here is based upon its contention that the carrier was not an insurer of the freight, with the exceptions mentioned in the instructions, but was only liable for loss occasioned by its negligence; and the alleged error of the trial court in refusing to admit in evidence the contract of shipment whereby the carrier undertook to limit its liability.

The plaintiff having based his cause of action on defendant's failure to obey its common-law duty to safely and properly deliver the hog, need not allege negligence

as essential to his cause of action. [Boyd v. Express Co., — Mo. App: —, 211 S. W. 702; Bragg v. Payne, — Mo. App. —, 235 S. W. 148; Cudahy Packing Co. v. A. T. & S. F. Ry. Co., 193 Mo. App. 572, 187 S. W. 149.]

At common law, in the absence of a special contract, the liability of the carrier is the same with respect to live stock as to inanimate freight, with certain additional exceptions. The exceptions, will respect to live stock, are that, the carrier is not liable if its failure to properly and safely deliver in good condition was due to the act of God, the public enemy, the inherent vice or nature of the animal or its vicious propensities, or the fault of the shipper. The only difference as to liability between animate and inanimate freight is the inherent vices or vicious propensities of the live stock. There is no particular question involved here as to value. The value stated in the shipping contract of the two hogs was $250. The hog which died was the older and larger of the two, and more valuable. The value was not stated separately, and the evidence discloses that the hog which died was reasonably worth $150. This evidence in no way conflicts with the value of the two hogs as stated in the shipping contract.

If there was any serious controversy here as to the amount plaintiff was entitled to recover, we would have to hold, perhaps, that the court's action in refusing to admit the contract in evidence would constitute reversible error; but where there is no claim by plaintiff that he is entitled to recover more than the value stated in the shipping contract, we do not think the refusal to admit this contract in evidence would constitute reversible error on that ground.

This contract, which was excluded by the court, provided that the defendant should be liable for the loss only in case of negligence, and that the plaintiff should prove such negligence. Was this provision of the contract valid, and if so, was it reversible error to refuse its admission in evidence?

211 M. A.—9

In C., N. O. & T. P. Ry. Co. v. Rankin, 153 Ky. 730, l. c. 736, 156 S. W. 400, in discussing the liability of a railroad company in a shipment of live stock, under circumstances somewhat similar to the case at bar, it is said:

"While it is sometimes said that a railroad is not a carrier of live stock with the same responsibilities which attend it as a carrier of goods, and that the nature of the property, the inherent difficulties of its safe transportation, and the necessity of furnishing to the animals food and water, light and air, and of protecting them from injuring each other, imposes duties in many respects widely different from those devolving upon a mere carrier of goods (North Pa. R. Co. v. Com. Nat. Bank of Chicago, 123 U. S. 727); and while some of the authorities hold that carriers of live stock are not liable as common carriers, but only bound to transport with ordinary care and skill (Heller v. Chicago, etc. R. Co., 109 Mich. 53, 63 Am. St. Rep., 541; Baker v. Louisville, etc. R. Co., 10 Lea (Tenn.), 304); yet the decided weight of authority is that a carrier receiving live stock for transportation does so under the usual liabilities attached to a carrier of goods, and so, omitting certain exceptions not material to the consideration of this case, it is the general rule that the carrier of live stock is liable for any loss or damage not due to the act of God or the public enemy or to the inherent or proper vice of the animals, unless attended by some negligence on his part." Many authorities are cited to support this statement of the law.

If the carrier seeks to relieve itself from liability by bringing itself within the exceptions above noted, the burden devolves upon it to do so. If the carrier produces evidence tending to bring it within any of these exceptions, then the duty would perhaps rest upon the plaintiff to come forward with evidence showing to the contrary. It would then be a question for the jury as to whether or not defendant had breached its common-law duty to deliver the live stock in a safe and sound condition.

In C., N. O. & T. P. Ry. Co. v. Rankin, supra, l. c. 737, it is further stated:

"Having received possession of the stock it was charged with the duty of delivering them or explaining why that had not been done. If the failure to deliver was due to the act of God, the public enemy, the public authority, or to the inherent nature of the live stock or the act or fault of the shipper or his agent, or to some other cause against which it might lawfully contract, it was for the carrier to bring itself within such exceptions. [Galveston, Harrisonburg & San Antonio Railway Co. etc. v. Wallace, 223 U. S., 481, 56 L. Ed., 516.]"

The rule as to the carrier's liability in cases of this kind was stated by this court in Libby v. Railroad, 137 Mo. App. 276, 117 S. W. 659, Botts v. St. Louis & Hannibal R. Co., 191 Mo. App. 676, 177 S. W. 746, and other cases. However, there is language used in some of these cases which lends color to the assertion of defendant that the burden was upon the plaintiff to show just how the animal received its injuries. But the cases above mentioned were based upon negligence, and negligence was pleaded as a ground of recovery; and, where plaintiff bases his cause of action upon negligence, the burden, of course, is upon him to prove such negligence. [Bland v. Chicago & A. R. Co., — Mo. App. —, 232 S. W. 232; Schade v. Missouri Pacific Ry. Co., 204 Mo. App. 88, 221 S. W. 146.]

In Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U. S. 481, l. c. 492, in discussing a case which arose under the Carmack Amendment, the Supreme Court of the United States, speaking through Mr. Justice LAMAR, said:

"When the holders of the bills of lading proved the goods had not been delivered to the consignee, the presumption arose that they had been lost by reason of the negligence of the carrier or its agents. The burden of proof that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract was then cast upon the carrier. The plaintiffs were

not obliged both to prove their case and to disprove the existence of a defense. The carrier and its agents, having received possession of the goods, were charged with the duty of delivering them, or explaining why that had not been done. This must be so, because carriers not only have better means, but often the only means, of making such proof. If the failure to deliver was due to the act of God, the public enemy or some cause against which it might lawfully contract, it was for the carrier to bring itself within such exception.''

Learned counsel for defendant argues that the Hepburn Act, as amended by the Carmack Amendment, and later by the Cummins Amendment, U. S. Comp. Stat. 1916, section 8604a, clearly indicates an intention that the carrier shall only be liable for negligence, and relies upon the words, ''caused by it,'' as used in said statute with respect to the carrier's liability.

In Lehigh Valley R. Co. v. John Lysaght, 271 Fed. 906, l. c. 910, it is stated:

''Happier words than 'caused by it' might have been used, but they fairly cover loss or damage for which the carrier would be liable at common law.''

The burden of proof is a matter of substance. While ordinarily the failure to admit the shipping contract in evidence would constitute reversible error, we do not think the provision of the contract above referred to is a reasonable regulation which the defendant could enforce. And plaintiff having based his cause of action upon defendant's common-law liability as an insurer, the rejection of this contract, under all the facts of this case, would not constitute reversible error. [See, also, Cincinnati N. O. T. P. R. Co. v. Rankin, 242 U. S. 319, and Hartford Fire Insurance Co. v. Payne, — Mo. App. —, 243 S. W. 357.]

While there is evidence that the hog may have died from its vicious propensities, or its inherent vices, there is also evidence from which it may be inferred that its death was due to defendant's failure to properly provide water, or care for it properly. The inherent vices or

vicious propensities of the animal would have to be the sole cause of its death to/ relieve defendant of liability. If these exceptions concurred with defendant's failure to discharge its common-law duty, and caused the death, defendant would not be relieved from liability. [4 R. C. L., page 715, section 188.]

The instructions fairly submitted the case to the jury, and, finding no reversible error, the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ., concur.*