## A. W. BESHEER, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

### Springfield Court of Appeals, November 10, 1910.

1. COMMON CARRIERS: Shipping Contract: Reduced Rate: Inconsistent Recitals in Contract. In an action for damages for delay in transportation of two hundred head of sheep, it appeared that the shipper had signed a contract which contained a notice that the carrier had two rates on live stock, and that the rate charged for shipment of live stock under said contract was lower than the rate charged if the shipment was not made under the contract, but at the carrier's risk. It was also stated in the contract that this shipment was made at the "reduced rate of tff. per car or cwt., which is less than the rate of shipment at carrier's risk." *Held*, that the recital in the contract that the "tariff rate" was charged was inconsistent with the recital that the rate charged was a reduced rate and renders nugatory the latter recital, and there being no evidence that a reduced rate was charged the carrier was held to its common law liability.

2. ——————: ——————: ——————: Limiting Valuation. It is now the settled law of this state that a carrier and shipper may agree upon the value of the property shipped, and that the rate of freight for transportation may be guaged by said valuation, but where this is true the valuation of the stock constitutes the consideration for the reduced rate, and if no reduced rate is given the provisions as to the valuation of the stock becomes null and void.

3. ——————: ——————: Definition of "Tariff Rate." By the term "tariff rate" is meant the regular or highest rate charged by the carrier.

4. CONTRACTS: Construction: Common Carriers: Interstate Shipment. In construing a shipping contract the appellate court will follow the Supreme Court of this state, and will not assume that the Supreme Court would put one construction upon a contract relating to an intrastate shipment and another construction upon the same contract when the shipment was an interstate shipment.

Appeal from the Howell Circuit Court.—*Hon. W. N. Evans*, Judge.

AFFIRMED.

*W. F. Evans, W. J. Orr* and *J. H. Orr* for appellants.

(1) That a common carrier may by contract based on rates, limit its common law liability is so well settled in this country that space prevents a citation of only a few of the leading cases. Mires v. Railroad, 114 S. W. 1052; Harvey v. Railroad, 74 Mo. 538; Hart v. Railroad, 112 U. S. 331; Snider v. Express Co., 63 Mo. 383; Ketchen v. Express Co., 52 Mo. 390; Reed v. Railroad, 60 Mo. 199; Rice v. Railroad, 63 Mo. 314; Sturgeon v. Railroad, 65 Mo. 569; O'Brien v. Kinney, 74 Mo. 125; Railroad v. Cleary, 77 Mo. 638; Kellerman v. Railroad, 136 Mo. 177; McFadden v. Railroad, 92 Mo. 343; Wyrick v. Railroad, 74 Mo. App. 406; Duvenrick v. Railroad, 57 Mo. App. 556; Gerber v. Railroad, 63 Mo. App. 148; Patterson v. Railroad, 56 Mo. App. 662; Phoenix Mfg. Co. v. Railroad, 101 Mo. App. 456. (2) It is a reasonable regulation on the part of carriers to base their rates on the value of the property shipped, and especially is this true of live stock. Musser v. Express Co., 1 Fed. 385; Graves v. Railroad, 50 Am. Rep. 283; Express Co. v. Foley, 46 Kan. 457; Alair v. Railroad, 53 Minn. 160; Express Co. v. Carnahan, 64 N. E. 647; Johnston v. Railroad (S. C.), 55 A. & E. R. R. cases, 349; Durgin v. Express Co., 20 Atl. 328; Macfarlane v. Express Co., 139 Fed. 983; Railroad v. Fraloff, 100 U. S. 27; Railroad v. Weakley (Ark.), 8 S. W. 137. (3) This being an inter-state shipment the validity of the live stock contract put in evidence by appellee is to be determined by the Federal law as found in the decisions of the Federal Courts and the Interstate Commerce Acts. Hanley v. Railroad, 187 U. S. 617; Mires v. Railroad, 114 S. W. 1052.

*N. B. Wilkinson* for respondent.

(1)   The contract which defendant claims releases it from liability, on the ground that it provides for a reduced freight rate, is not tenable, as it does not provide for any specific rate.   And courts will construe a contract like this to be the highest rate, so far as exempting a carrier from its common law liability. George v. Railroad, 214 Mo. 551; 117 S. W. 663; Burgher v. Railroad, 120 S. W. 675; Kellerman v. Railroad, 68 Mo. App. 269; Livery Co. v. Railroad, 113 Mo. App. 151; Vaughn v. Railroad, 78 Mo. App. 639; Bank v. Railroad, 119 Mo. App. 16; Phoenix Powder Co. v. Railroad, 101 Mo. App. 453; Ratliff Bros. v. Railroad, 118 Mo. App. 653; Kellerman v. Railroad, 136 Mo. 190; Smith v. Railroad, 112 Mo. App. 614; Shular v. Railroad, 92 Mo. '342; Insurance Co. v. Railroad, 74 Mo. App. 97; Ingwersen v. Railroad, 116 Mo. App. 139; Myers v. Railroad, 120 Mo. App. 299; Fulbright v. Railroad, 118 Mo. App. 482.   (2)   Where the word "Tariff" is used in a contract—as in case át bar—and no rate named specially, no special rate is given.   Hancock v. Railroad, 128 S. W. 807; Holland v. Railroad, 139 Mo. App. 702; George v. Railroad, 214 Mo. 551. (3) Unless there is a special rate given and named in the contract it will not be upheld.   Wilcox v. Railroad, 135 Mo. App. 193; Shelton v. Railroad, 131 Mo. App. 566.

COX, J.—Action for damages alleged to have been caused by the negligence of defendant in delaying the transportation of two hundred head of sheep beyond a reasonable time, by reason of which delay, the sheep lost in weight and were required to be sold at a reduced price.   The shipment was from Mountain View, Missouri, to Kansas City, Missouri.   Trial by jury and verdict for plaintiff for $350, and defendant has appealed.

Error is assigned in the giving and refusing of instructions and in the admission of certain testimony

on the part of plaintiff. We have examined the instructions given on the part of plaintiff and we find them free from any substantial error, and have also examined the abstract as to the admission of testimony on the part of plaintiff now complained of by defendant, and find no error was committed in relation thereto.

This shipment was made under what is called a live stock contract, and it is now contended by appellant that under the terms of that contract they could, in no event, be liable for a greater sum than that which would equal the difference between what the sheep brought and what they would have brought at three dollars per head. This contract, so far as necessary to recite, provides as follows:

"Notice.—This company has two rates on live stock; the rate charged for shipment of live stock under the following contract is lower than the rate charged if the shipment is not made under the following contract, but at carrier's risk. The rates of freight are based upon the nature and extent of liability assumed by the carrier. The shipper has the right of election whether to ship live stock under this contract at the lower rate, or not under this contract, but at carrier's risk, at a higher rate. . . .

This agreement . . . witnesseth, that in consideration of the reduced rate upon which this shipment is transported, and of the mutual promises herein set forth of the parties hereto, it is agreed between said parties as follows:

1. The company shall transport the following cars of live stock, and the parties in charge thereof, viz.: cars, said to contain 210 head of sheep, . . . from Mountain View, Missouri, station, to Kansas City, Missouri, station, . . . at the reduced rate of tff. per car or cwt. which is less than the rate for shipment at carrier's risk. . . . .

2. The valuations of the live stock which are

agreed upon are the actual cash values of the same at
the time and place of shipment, but in no case, how-
ever, to exceed . . . three dollars for each sheep or
goat. In case of death, loss or total injury of the live
stock from any cause for which the company may be
liable, payment shall be made therefor at said valua-
tions, and in case of partial injury the amount of dam-
ages paid shall not exceed the proportions said partial
injury shall bear to death, loss or total injury."

It is now insisted by appellant that the plaintiff,
in making the shipment under this contract, secured
a reduced rate by reason of the fact that he agreed
that the sheep should be valued at three dollars each.
It is now the settled law of this state that a carrier
and shipper may agree upon the value of the property
shipped, and that the rate of freight for transportation
may be guaged by said valuation, but where this is
true, the valuation of the stock constitutes the consid-
eration for the reduced rate, and if no reduced rate is
given the provision as to the valuation of the stock be-
comes null and void. [George v. Railroad, 214 Mo. 551,
113 S. W. 1099.] In this case there was no evidence
outside of the contract itself as to whether the rate
charged and paid was a reduced rate or not, and that
question is, therefore, to be determined by the recitals
of the contract itself. It will be noticed that while this
contract recites that the rate charged is a reduced rate,
it also recites that the rate charged is the tariff rate.
These two statements are inconsistent for by the term
tariff rate is meant the regular or highest rate, and was
held in the case of George v. The Railroad, supra,
where the contract recites that the rate charged is the
tariff rate, this statement renders nugatory the other
recital that the rate charged is a reduced rate, and it
was held in that case by reason of this fact that the
contract showed upon its face that the rate charged was
not a reduced rate, and, therefore, there was no con-
sideration for what is called the release contract, and

the defendant in that case was held to its common law liability, and the contract of shipment signed by the shipper and the agent of the company disregarded. The present case is on all fours with the George case, supra, and, hence, we hold that the contract of shipment in this case was without consideration and defendant must be held to its common law liability.

Appellant insists that the shipment in this case was an interstate shipment, because of the fact that in carrying the freight from Mountain View, Missouri, to Kansas City, Missouri, it traveled for a part of the distance in the State of Kansas, and that the George case above cited is not an authority in this case for the reason that in the George case the shipment was an intrastate shipment and that this case must be determined by the decisions of the Federal courts construing the Interstate Commerce Law. It is unnecessary to pass upon this question in this case for the reason that this case turns upon the construction of the contract itself, and upon that question we are following the Supreme Court of this state, as it is our duty to do, and we cannot assume that that court would put one construction upon a contract relating to an intrastate shipment and put another construction upon the same contract when the shipment was an interstate shipment.

Whether we determine this by the Federal or state authorities they are all agreed that any contract which releases the carrier from any part of its common law liability must be supported by a consideration, and if the contract shows upon its face that there is no consideration it is null and void and that is all that we hold in this case and in following the George case supra we are simply holding that the proper construction of this contract is that it shows upon its face that there was no consideration for the provisions therein limiting the common law liability of the carrier. Judgment will be affirmed. All concur.