R. C. WINSLOW, Respondent, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, May 19, 1913.

1. CARRIERS OF LIVE STOCK: Negligence: Delayed Shipment. The plaintiff sued to recover damages for loss sustained by a delay in the shipment of hogs over the defendant's railroad. The plaintiff loaded his hogs on the cars at the instruction of the defendant's agent, but instead of the train going out immediately it was compelled to await the passage of two passenger trains. While waiting on the sidetrack, the weather being very warm, several of the plaintiff's hogs died, and others were greatly reduced in weight. *Held*, that the facts and circumstances shown in evidence were sufficient to take the case to the jury.

2. ———: ———: ———:' Insurer. The obligations of a common carrier with respect to the carriage of live stock are those of an insurer; but the carrier is not responsible for loss' or injury caused by the natural vices, propensities or infirmities of the animals.

3. INSTRUCTIONS: Negligence: Burden of Proof. An instruction which states, that this is a case wherein the duties of a common carrier are involved, and the jury are further instructed that when plaintiff proves unreasonable delay on the part of the defendant in the transportation of said shipment of hogs, if you believe that he has so proven, then the burden of the proof shifts to the defendant and the defendant then must prove by a preponderance of the evidence. that said delay was not the result of any negligence on its part, is erroneous.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

REVERSED AND REMANDED.

*W. P. Pinkerton* and *Scarritt, Scarritt, Jones & Miller* for appellant.

(1) The court erred in overruling the peremptory instructions. Warner v. Railroad, 178 Mo. 133; Decker v. Railroad, 149 Mo. App. 573; Moore v. Railroad, 28 Mo. App. 622; Cash v. Wabash, 81 Mo. App.

109; Hance v. Express Co., 48 Mo. App. 179; Hance v. Express Co., 66 Mo. App. 486; Peterson v. Railroad, 102 N. W. 597. (2) The court erred in giving and refusing instructions. Clark v. Railroad, 138 Mo. App. 424; Decker v. Railroad, 149 Mo. App. 537; Marshall v. McKelvy, 55 Mo. App. 240; Gelvin v. Railroad, 21 Mo. App. 280; Geist v. St. Louis, 185 Mo. 211; De-Steiger v. Railroad, 73 Mo. 33; Warner v. Railroad, 178 Mo. 133; Cash v. Railroad, 81 Mo. App. 109.

*T. J. Wise* and *J. W. Farrar* for respondent.

(1) The court did not err in overruling the peremptory instructions of defendant. McCrary v. Railroad, 99 Mo. App. 518; McCrary v. Railroad, 109 Mo. App. 567; Sloop v. Railroad, 93 Mo. App. 605; Leonard v. Railroad, 54 Mo. App. 293; Hance v. Express Co., 48 Mo. App. 179; Hance v. Express Co., 66 Mo. App. 486; Cash v. Railroad, 81 Mo. App. 109; Libby v. Railroad, 137 Mo. App. 276; Faust v. Lee, 138 Mo. App. 722; Cunningham v. Railroad, 149 S. W. 1151. (2) There was no error in giving or refusing to give the instructions in this case. Hance v. Express Co., 66 Mo. App. 486; McCrary v. Railroad, 109 Mo. App. 567; Fruit & Nut Co. v. Railroad, 163 Mo. App. 426; Cash v. Railroad, 81 Mo. App. 109; Cunningham v. Railroad, 167 Mo. App. 273, 149 S. W. 1151; Sloop v. Railroad, 93 Mo. App. 605. (3) Plaintiff's instruction 1 given by the court is the law as the petition is based upon failure to promptly transport, safely carry and deliver in good condition, and not upon specific negligence, as contended by appellant. Hance v. Express Co., 66 Mo. App. 490; Cunningham v. Railroad, 167 Mo. App. 273, 149 S. W. 1151.

JOHNSON, J.—This is an action by a shipper of fat hogs against a common carrier to recover damages alleged to have been caused by an unreasonable de-

·lay in beginning the transportation after the carrier received the shipment. Verdict and judgment were for plaintiff and the cause is before us on the appeal of defendant.

On May 5, 1909, defendant received seventy-seven head of hogs from plaintiff at its station at Shackelford and undertook to transport them as a common carrier for hire to the stock yards at Kansas City, a distance of seventy-five miles. The hogs were put in the railroad pens in the morning and were to be loaded in a car provided for them in time to go west on a stock train scheduled to leave Shackelford at 7:35 p. m. The hogs were fat, the day was exceptionally warm and it was not considered safe to load them in the car until just before the arrival of the train. To leave on schedule time it was necessary that the train should arrive ten or fifteen minutes before that time. For some reason not disclosed the train was late and did not arrive until seven minutes after the time scheduled for its departure. When the train was known to be approaching, the agent of defendant directed plaintiff to load the hogs in the car which was standing at the loading chute. This was done and the car was removed from the chute and put into the train which then stood on a sidetrack for an eastbound passenger train, known as the "Slater plug," to pass. The freight train was scheduled to pass this train at Shackelford at 7:35, and to pass another eastbound passenger train, called the "Hummer," at Mt. Leonard, the first station west. Shortly after the car of hogs was placed in the train the agent first learned that the "Slater plug" was late and would not arrive until after the "Hummer" had passed. By this time it was too late for the stock train to make Mt. Leonard to meet the "Hummer" there, and it was held at Shackelford until, after the arrival of both of the passenger trains. There is a conflict in the evidence over the time the stock train was

held on the sidetrack. Plaintiff states the entire time
was two hours but admits he had no watch and took
no accurate note of the time. The evidence of defend-
ant shows that the stock train arrived at 7:42, left at
8:37, and that twenty-one minutes were consumed in
the completion of loading and switching the car into
the train, leaving only thirty-four minutes of lost
time. After leaving Shackelford the stock train not
only made up the lost time but arrived at the stock
yards in Kansas City thirty minutes ahead of its
scheduled time. Five of the hogs died in the car and
the evidence of plaintiff shows the others were in-
jured and reduced in weight in excess of the usual in-
jury and loss incidental to ordinary shipments of that
character. This damage is attributed by plaintiff to
the conditions to which the animals were subjected
during the long delay on the sidetrack at Shackelford.

The chief of the weather bureau at Kansas City
testified that the temperature on that day was "a new
record for high temperature in May" and was 86 de-
grees at seven o'clock p. m. There was no wind and
plaintiff states the hogs became overheated from be-
ing crowded so long in a stationary car and that this
would not have happened to them had the train been
running. Further plaintiff states that when the agent
told him about the "Slater plug" being late he asked
the agent to get the train out or else have the car run
to the chute for the hogs to be put back into the pens
until the train would be ready to go on and the agent
replied that he would do the best he could, but did
nothing.

The petition alleges "that on or about the 5th day
of May, 1909, plaintiff delivered to defendant, and
defendant accepted, seventy-seven (77) head of fat
hogs at Shackelford, Missouri, for shipment to Kan-
sas City, Missouri.

"That defendant agreed for and in consideration
of certain freight charges paid, or to be paid, well

and safely to carry said seventy-seven head of hogs from point of shipment to point of destination, and at the latter place to deliver the same to plaintiff, his agents, or assigns, in as good condition as when received by defendant at point of shipment, and to transport said shipment promptly and to deliver the same at destination in a reasonable time.

"Plaintiff states that defendant, in violation of said agreement and in total disregard of its duty as a common carrier, so carelessly and negligently conducted itself in the premises that said shipment was delayed at point of shipment for about two hours and thirty minutes."

The first point made by defendant is that the court erred in overruling the peremptory instructions it requested.

The cause pleaded in the petition is a breach of a duty imposed on a common carrier by the rules of the common law. The obligations of a common carrier with respect to the carriage of live stock are those of an insurer but the carrier is not responsible for loss or injury caused by the natural vices, propensities or infirmities of the animals. [McFall v. Railway, 117 Mo. App. l. c. 483; Hance v. Express Co., 48 Mo. App. 179; Cash v. Railroad, 81 Mo. App. 109.]

Defendant should not be held liable as an insurer for the damage sustained by plaintiff if caused by the natural inability of the hogs to withstand the incidental hardships of transportation under such unfavorable weather conditions but was bound to exercise care to prevent loss from such natural infirmities, and the real question at issue is whether, under all the circumstances of the case as portrayed in the evidence of plaintiff, defendant was negligent in handling the shipment after its receipt for transportation. It cannot be said that defendant was negligent in the operation of its trains or in holding the stock train at Shackelford for thirty-four minutes or

for two hours to allow passenger trains to pass. No inference of negligence may be drawn from the mere fact of delays in the operation of railroad trains. Delays are more often due to accidental or necessitous causes than to negligence and it requires proof of more than mere delay to raise an inference of negligence.

But the evidence does tend to show that defendant was negligent in the handling of this highly perishable freight. It must have known that the stock train would have to remain a long time on the sidetrack at Shackelford and its agent should have been informed of that fact in time to avoid prematurely loading the hogs. While in the pens they would suffer no injury but crowded into a car left standing for a long time in such hot weather they would pile up and receive injury. These facts should have been taken into consideration by defendant and care commensurate to the needs of the situation should have been exercised. And further the jury were entitled to infer that the agent did not exhibit proper care in refusing plaintiff's request that the hogs be unloaded and kept in the pens until the end of the delay the agent knew would occur. We think plaintiff has shown negligence in these particulars and that such negligence was the cause of the death of five of the hogs and of a shrinkage in weight of the others.

The demurrer to the evidence was properly overruled.

At the request of plaintiff the following instruction was given: "The court instructs the jury that this is a case wherein the duties of a common carrier are involved, and the jury are further instructed that when plaintiff proves unreasonable delay on the part of the defendant in the transportation of said shipment of hogs, if you believe he has so proven, then the burden of proof shifts to the defendant and the defendant then must prove by a preponderance of the

evidence that said delay was not the result of any negligence on its part.''

Plaintiff relies on the decision of the St. Louis Court of Appeals in Cunningham v. Railroad, 149 S. W. Rep. 1151, 167 Mo. App. 273, as an authority supporting this instruction, but in that case it is said ''something more should appear tending to prove the negligence of the carrier when the injury is to live stock then when to inanimate freight, for, as to live stock, the shipper must offer something from which the jury may find the injury was not received as a result of the proper vice of the animal or its companions in the car.''

Where it appears as it does in the present case that the injury could have resulted either from the proper vice or infirmity of the animals or from negligence of the carrier, the burden is on the plaintiff to show affirmatively that negligence was the cause and ordinarily that burden remains with the plaintiff to the end of the case. In the Cunningham case the injuries were of such character as to make, in the opinion of the court, a prima facie showing of negligence and NORTONI, J., observed that ''such proof will suffice for the prima facie purposes of the case, and the burden is thereby shifted to defendant to relieve itself of the charge of negligence.'' We do not find it necessary to express our views on the correctness of the rule thus expressed. The injuries in the present case do not point to external violence and of themselves are as consistent with a cause for which the carrier would not be liable as with a negligent cause for which it would be liable. In such case there can be no question but that plaintiff should carry the burden of proof throughout the case. Clearly the instruction was erroneous.

The judgment is reversed and the cause remanded. All concur.