W. F. SCHADE, Respondent, v. THE MISSOURI
PACIFIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted February 4, 1920.
Opinion Filed April 6, 1920.

1. **COMMON CARRIERS: Injuries to Live Stock: Negligence: Evidence: Question for the Jury.** In an action to recover the value of a jack shipped, which was delivered to shipper in a damaged condition and subsequently died, evidence reviewed and *held* sufficient to take the case to the jury, and that the demurrers interposed by carrier were properly overruled.

2. ———: ———: ———: ———: **Burden of Proof on Shipper.** In an action to recover the value of a jack shipped, which was delivered to shipper in a damaged condition and subsequently died, the burden of proof was on the shipper to make out a case of negligence against the carrier.

3. **INSTRUCTIONS: Common Carriers: Injuries to Live Stock: Not Error to Instruct on Facts from Which Negligence May Be Infered.** In an action to recover the value of a jack shipped, which was delivered to shipper in a damaged condition and subsequently died, an instruction telling the jury that if they found that the jack was sound when shipped but was injured when he arrived, they might take that fact into consideration with all other facts and circumstances in evidence, if error, *held* harmless, in view of the evidence in the case.

4. **COMMON CARRIERS: Negligence: Limitation on Liability: Written Notice: Reduced Rate: Consideration.** A provision in a contract between a shipper and carrier for the shipment of live stock, requiring notice in writing of injuries sustained during shipment, is a valid provision in contracts for intrastate carriage, if supported by good and valid consideration.

5. ———: ———: **Injuries to Live Stock: Notice.** In an action to recover the value of a jack shipped, which was delivered to a shipper in a damaged condition and subsequently died, where it appeared that the jack was received at its destination in a damaged condition and limped, and the shipper called such fact to the attention of the carrier's agent, who placed the jack in shipper's control, and suggested that a named veterinary be sent for, such facts were actual notice of the injuries to the carrier and a consent to shipper to receive and care for the jack.

6. ———: ———: ———: ———: **Written Notice: Waiver.** Where, in an action to recover the value of a jack shipped, shipper called the attention of the carrier's agent to the damaged condition of the jack when unloaded at its destination, and such agent suggested that a veterinary he named be sent for to look after the jack, and consented that shipper receive and care for the jack, *held* a written notice of the injuries was waived.

7. ———: ———: ———: **Limitation on Liability: Ineffectual Unless Agreed to by Shipper.** In an action to recover the value of a jack shipped, which was delivered to a shipper in a damaged condition and subsequently died, the fact that the contract contained a statement on the part of the carrier that in case of loss of the jack or damage to it the amount of recovery should not exceed $100, could not operate to exempt the carrier from liability for damages exceeding such amount, such a limitation being no agreement between the parties as to the value of the jack, and not based on any consideration whatever, or covered by the reduced freight rate, but a mere arbitrary exaction or imposition of terms by the carrier itself, and *held* it was void.

8. ———: ———: ———: ———: **Shipper's Failure to Accompany Live Stock: Carrier Not Absolved From Liability.** In an action to recover the value of a jack shipped, which was delivered to shipper in a damaged condition and subsequently died, a clause in the contract requiring the shipper to accompany and take care of the stock while in transit and the shipper did not do this, in the absence of any showing *held* not to absolve the carrier from liability.

Appeal from the Circuit Court of Cape Girardeau County —Hon. *Frank Kelly*, Judge.

AFFIRMED.

*James F. Green* and *W. C. Russell* for appellant; *E. J. White* of counsel.

(1) There is no positive proof of negilgence, nor is there any proof from which the jury could infer negligence on the part of the carrier. Therefore, the demurrer should have been sustained. Hance v. Express Co., 48 Mo. App. 179; Cash v. Railroad Co., 81 Mo. App. 109; Cunningham v. Railroad Co., 167 Mo. App. 273; Smith v. Railway Co., 183 S. W. 701; Libby v. Railway Co.,

137 Mo. App. 276. (2) Plaintiff's instructions Nos. 1 and 2 should have been refused because there was no testimony on which to base them. Authorities, supra. (3) Plaintiff's instructions No. 3, in effect, told the jury that if the jack was in good condition when delivered to the company, and injured when he arrived at Jackson, they should find for plaintiff. It singled out the only fact proven and emphasized it to the jury. This was error. (4) The recital in the contract that the rate was a reduced one was prima-facie evidence of the fact. In the absence of proof to the contrary, defendant's instruction No. 7 should have been given. McFadden v. Railway Co., 92 Mo. 343; Kellerman v. Railway Co., 136 Mo. 177; Harvey v. Railway Co., 74 Mo. 538; Bowring v. Railway Co., 77 Mo. App. 251; Shelton v. Railway Co., 111 S. W. 627; Besheer v. Railway Co., 151 Mo. App. 80. Under the contract of shipment, the agent at Jackson had no authority to "waive, modify or amend" and of its provisions. The fifth clause of the contract required written notice of any damages for any loss or injury to the jack to be served on the agent at destination within one day after the delivery at destination. This was not given, and therefore plaintiff cannot recover. George v. Railway Company, 214 Mo. 551.

*A. M. Spradling* for respondent.

(1) The demurrer was properly overruled. While, in order to establish liability against a carrier for injury to a shipment of life stock, it is not necessary to prove negligence on the part of the carrier by direct evidence, it is essential to show a state of facts or circumstances from which negligent conduct on its part may be inferred. Botts v. Railroad, 191 Mo. App. 676, 681; Foust v. Lee, 138 Mo. App. 722, 729; Libby v. Railroad, 137 Mo. App. 276, 282; Cash v. Railroad, 81 Mo. App. 109, 114; Hance v. Railroad, 48 Mo. App. 179, 183. (2) Plaintiff's instructions properly declared the law and are the same instructions that were given in the following case. Pacific Ex-

press Co. v. Emerson, 101 Mo. App. 62, 72. (3) If it appears that the stock were in good condition when delivered to the carrier for transportation, and were wounded upon reaching their destination, the jury may infer from such facts that the transporation was not attended with due care. Cunningham v. Railroad, 167 Mo. App. 273, 28; Foust v. Lee, 138 Mo. App. 722, 729; Libby v. Railroad, 137 Mo. App. 276, 282. (4) The shipment in this case was an intrastate shipment, and not governed by the law of interstate shipments. A stipulation in the bill of lading requiring the shipper to give the carrier notice of loss or injury is not a reasonable regulation which the carrier may insert in the contract, but it is, in fact, a limitation upon the common-law liability of the carrier. Botts v. Railroad, 191 Mo. App. 676, 682; Grain Co. v. Railroad, 177 Mo. App. 194, 197; Burgher v. Railroad, 139 Mo. App. 62, 70; Libby v. Railroad, 137 Mo. App. 276, 287; George v. Railroad, 214 Mo. 551. (5) Since the contract in this case is void, it is not material whether a stipulation requiring notice may be waived, but the following cases hold that a stipulation requiring notice may be waived. Summers v. Railroad, 114 Mo. App. 450, 458; Ingwerson v. Railroad, 116 Mo. App. 139, 150; McFall v. Railroad, 117 Mo. App. 477, 484; Jones Bros. v. Railroad, 117 Mo. App. 523, 526; Bushnell v. Railroad, 118 Mo. App. 618, 627; Simms v. Railroad, 177 Mo. App. 18, 27.

REYNOLDS, P. J.—Action to recover the value of a registered jack called "John Elmer." On a trial in the circuit court plaintiff recovered the sum of $850, and after an unsuccessful motion for a new trial defendant duly perfected an appeal to this court. The action was originally against the Missouri Pacific Railway Company and the St. Louis, Iron Mountain & Southern Railway Company. Verdict and judgment went against the former alone, plaintiff dismissing as to the latter. The petition avers that in April, 1914, plaintiff purchased a registered jack from L. M. Monsees & Sons, farmers

and stock raisers of Pettis County, in this State; that on April 17, 1914, Monsees & Sons delivered to defendant, the Missouri Pacific Railway Company, the jack in good condition; that the Railroad Company received it and agreed, in consideration of certain freight charges, to carry it safely from Smithton in Pettis County, to St. Louis, and at the latter place deliver it to the St. Louis, Iron Mountain & Southern Railway Company in as good condition as when received by it; that the Missouri Pacific Railway Company delivered the jack to the St. Louis, Iron Mountain & Southern Railway Company, at St. Louis, which latter railroad received it and agreed, for and in consideration of freight charges, to carry it from St. Louis to Jackson, in this State, and at the latter place to deliver it to plaintiff in as good condition as when received by it. The petition then avers "that the defendants, in violation of their said agreements, and in total disregard of their duties as common carriers aforesaid, so carelessly and negligently conducted themselves in the premises that said jack was greatly injured and was delivered to plaintiff in a damaged condition and subsequently died from the effect of said injuries."

The answer of the defendants sets out that before shipping the jack to plaintiff, Monsees & Sons, as consignors and agents of plaintiff, entered into a contract of shipment with the Missouri Pacific Railroad Company, then in control and operating a railroad owned by the St. Louis, Iron Mountain, & Southern Railway Company, by the terms of which contract the defendants undertook to carry the jack, together with one other, from Smithton to Jackson, at the rate of $49.22, that rate less than the rate charged for shipments transported at carrier's risk, and that in consideration of the reduced rate and other considerations, it was agreed in the contract, among other things, as follows: First that plaintiff should assume all risk and expense of feeding, watering, bedding and otherwise caring for the live stock covered by the contract while in the cars, yards, pens or elsewhere, load-

Schade v. Mo. Pac. Ry. Co.

ing and unloading the same at his own expense and risk; that the plaintiff and his agents failed and neglected to place some person in charge of the stock while it was being transported to care for and look after it while in the cars, and that if any injury was suffered or sustained by the jack known as John Elmer, it is due to the failure of plaintiff and his agents to place some person in charge of the jacks to look after them and care for them while being transported from Smithton to Jackson. Second, that as a condition precedent to the recovery of any damages for any loss or injury to the jacks covered by the contract for any cause, including delays, it was agreed that plaintiff and his agents would give notice in writing of the claim thereof to some general officer of the defendants, or to their nearest agent, or to the agent at the destination, or to some general officer of the delivering line before the jacks were removed from the point of shipment and place of destination, such written notification to be served within one day after the delivery of the jacks at destination, to the end that such claim might be fully and fairly investigated, and that a failure to fully comply with the provisions of this clause should be a bar to the recovery of any and all claims, and to any and all suits or actions brought thereon; and it is averred that plaintiff and his agents failed to give written notice of any claim or injury to either of the jacks to some general officer of the defendants or to their nearest station agent or to their agent at Jackson, Missouri, before the jacks were removed from the station at Jackson, and before the stock was mingled with other stock, and failed to serve such written notification upon some of the persons above named within one day after the delivery of the jacks at said station of Jackson, that being the place of destination; that they failed to give any written notice to any of the above officers or agents of defendants until the first day of September, 1914, nearly five months after the jacks were delivered by defendants to plaintiff at their station at Jackson, and this failure is pleaded in bar of the action. Third, the further

provision in the contract pleaded is that the limitation of loss was $100 for each jack, when shipped under a like contract. . . . Fifth, that by the express provisions of the contract the shipper and agent of plaintiff acknowledged that they had the option of making the contract of shipment under the tariff rates either at carrier's risk or "upon a limited liability, and that they had selected the rate and liability named therein, to-wit, a limited liability based on a reduced rate and expressly accepted and agreed to all the stipulations and agreements and conditions contained in said contract of shipment." Finally, that it was expressly agreed in the contract that no agent of the defendants should have any authority to waive, modify or amend any of the provisions of the contract.

To this answer a reply was filed, admitting the shipment to plaintiff by Monsees & Sons, from Smithton to Jackson over the lines of the defendant, of the jack known as John Elmer, but it is averred that the purported contract under which the jack was alleged to have been shipped was void; admits that the Missouri Pacific Railway Company was then in control and operating the St. Louis, Iron Mountain & Southern Railway Company, but denies all other allegations, and by way of further reply plaintiff avers that on April 19, 1914, the date of the delivery of the jack to him, he notified the defendant's agent at Jackson, Missouri, of the condition of the jack and of his injuries and that the agent procured a veterinary surgeon to examine the jack and report to him its condition.

There was evidence in the case to the effect that the jack in question, along with another, was in fine condition when shipped, and that its value was from eight hundred and fifty to nine hundred dollars. The two jacks were shipped from Smithton to Jackson, both points in this State. When the car containing the jacks arrived at Jackson, on April 17, 1914, plaintiff, with a colored man in his employ, and the local agent of the railroad at Jackson, one Kinder, went to the car and were

present when the jacks were unloaded. There is no complaint of the condition of the younger jack and it does not appear that he was in any way injured.

Kinder went up with plaintiff and opened the car and then went back to his business at the depot. Plaintiff and his man untied the jack, "John Elmer," started to take him out, and found that he could hardly walk; was very sore and bruised and they had to push him out of the car and finally got him in front of the depot. There plaintiff called the agent's attention to the jack and he looked him over and told plaintiff to take him home. The jack was very sore in his right shoulder and left hind parts from his hip down; slightly swollen on the inside of the stifle and it took them nearly two hours to get him home, a distance of probably three quarters of a mile. The jack would flinch when touched on these parts. When plaintiff got home with the jack he telephoned for a veterinary, one Crites, who examined him, and the next day he got another veterinary, one Whitticre, to examine him. The jack lingered along until a "good day in May," when they took him out and gave him a little exercise. He picked up a little but was still in bad shape and went along that way until he finally died. His condition never materially improved from the time he was unloaded until he died. Witness had bought him for breeding purposes. He had served only two or three times. Witness considered him cheap at $850 and had been asked $900 for him but by buying him and the younger one he got him cheaper; had told Monsees to ship the two jacks to him at Jackson, Missouri. They were shipped from Smithton April 17th and arrived at Jackson on the 21st. From the appearance and conduct of the jack witness was led to believe that he was hurt internally, and he died August 29, 1914. On September 1st, plaintiff made out a bill against the St. Louis, Iron Mountain & Southern Railway Company for injury to the jack, valued at $850, and one-half the freight on him, $24.61, a total of $874.61, and delivered this to

the station agent of the St. Louis, Iron Mountain & Southern Railway Company on September 1, 1914; That, said witness, was the only notice he gave defendant, except what he gave verbally to the station agent. Witness paid the freight and got a receipted bill. As he remembered it, one of the jacks was tied in one end of the car and the other in the other end. They had to be tied or partitioned from each other and witness thought they had been tied. No one accompanied the shipment.

Plaintiff's hired, man testified practically to the same effect.

The station agent, called as a witness by plaintiff, testified that he remembered the shipment of the two jacks, one a large jack, the other a small colt. He was at the car when they were unloaded; stayed only until they took them out in the gangway; never noticed anything when down at the tracks, and when plaintiff brought the jacks to the depot, he called witness out to examine this one jack, "John Elmer," which was limping slightly. Shown, a receipt which he had given plaintiff when plaintiff paid the freight charges on the jacks, witness testified he had made the notation on it, "One jack limping, not skinned," and had directed plaintiff to take the jack home that evening and told him to call Crites, a vertinary, to look after it.

One of the veterinaries called to examine the jack, testified that he found him crippled in the left hind leg and left front leg; seemed to be crippled all over but these were the two worst places; looked to him like the animal had been spread apart; his actions and movements indicated that. On examination of the front leg and shoulder, found they were not much swollen; taking the leg and working it backward and forward it had the appearance of the ligaments being torn. The jack would not move without they made him and when he did move it was in a spreading way, and sideways, apparently very painful for him to move at all. This witness saw him once, and then the animal

looked like he had been spread out far enough to tear these ligaments. The other veterinary, Crites, attended the animal from the day after he was unloaded until he died. He testified practically to the same effect as the other, adding that he had made no post-mortem examination of the jack; that there was no external evidence, as far as he could see, of any bruises, except the swelling; that where injuries are deep they do not show much swelling and in this case they appeared to be deep and, in the judgment of this veterinary, the injuries were internal.

Plaintiff testified that he had a written contract with defendant for the shipment of these jacks, which had been made for him by the shipper at Smithton and sent to him and which he offered in evidence. It is headed, after the name of the Missouri Pacific Railway Company,

"Special Live Stock Contract.
Limiting the Liability of Carriers.
NOTICE.
This Company has More Than One Rate on Live Stock.

"The rate charged for shipment of live stock under the following contract is lower than the rate charged if the shipment is not made under the following contract but at carrier's risk."

Then follows the date, April 17, 1914, and the rate, "$49.22 per 33 fr. car," it being set out, after quoting the rate, "said rate being less than the rate charged for shipments transported at carrier's risk, for which reduced rate and other consideration it is mutually agreed between the parties hereto as follows:" Then follows the various conditions, including those set out by defendants in their answer.

The twelfth clause of the contract sets out that in making the contract, the owner or agent of the owner of the stock named, "expressly acknowledges that he has had the option of making this shipment under the tariff rates, either at carrier's risk or upon a limited liability, and that he has selected the rate and the lia-

bility named herein and expressly accepts and agrees to all the stipulations and conditions herein named.'' This is signed by the agent of the Missouri Pacific Railway Company at Smithton and by L. M. Monsees &Sons, as shippers.

This was substantially plaintiff's evidence.

Defendant demurred to this evidence at its close, which demurrer was overruled, defendant excepting. Defendant introduced in evidence the bill sent to it by plaintiff, dated September 1, 1914, claiming $874.61, that is to say $850 for the animal and $24.61 for the freight, and also introduced a letter its Freight Claim Agent had written, of date September 11th, to plaintiff, acknowledging the receipt of this bill and saying that the writer acknowledged the receipt of the notice filed with him on September 1st, in which claim was made for injury to a jack while in transit between Smithton and Jackson April 17, 18, 19, 1914, and advised plaintiff that the animal was delivered to him at Jackson, without complaint, there being no visible sign of injury at the time of delivery except that one of the animals limped slightly, which is not an indication of injury but quite frequently occurs when animals are in transportation, that being caused from long standing in the cars; and the letter concludes that from the fact that no complaint had been made for a period of five months after the delivery of the shipment, which would have given the carrier an opportunity to have protected its interests in the matter, the road was not in the position to consider making payment of any part of the amount claimed.

At the instance of plaintiff the court gave three instructions, the first to the effect that if the jury found that defendant was a common carrier for hire between Smithton and Jackson, in April, 1914, and that Monsees & Sons delivered to the Missouri Pacific Railway Company for plaintiff a registered jack, to be carried by defendant for hire from Smithton to Jackson and that it was in good and sound condition when

delivered to, and received by, defendant, and that while it was in defendant's possession "it was injured by the negligence, if any, of the defendants, their agents and servants, either in the handling or care of said jack, and that by virtue of and as a result of such negligence, if any, in the handling, care or delivering of said jack, and its injuries, if any, it died without the fault of plaintiff, then the verdict of the jury must be for the plaintiff for such sum as the jury may believe from the evidence said jack was reasonably worth, not to exceed the sum of $850."

The second instruction told the jury that it was the duty of defendant to exercise reasonable care and caution in the transportation of the jack to protect it from injury or damage while in the care of defendant, and if the jury believed from the evidence that the jack, while in transit, and while in the care of defendant, its agents or servants, and without any fault on the part of plaintiff became injured or damaged, and as a result thereof died from the effect of said injuries, and was wholly lost to plaintiff, "and that said injury, damage and death were caused by the negligence, if any, of the defendants, their agents, or servants in the handling and caring for said jack, then the jury will return a verdict for the plaintiff," etc.

The third instruction told the jury that if they found that the jack was delivered to the Missouri Pacific for shipment in a sound and healthy condition and properly prepared for shipment, and that when it arrived at Jackson the jack was injured, "then the jury may take that fact, if it is a fact, into consideration *with all other facts and circumstances in evidence* in determining whether the defendants, their agents and servants were negligent and careless and in the transportation of the jack from Smithton, in the State of Missouri, to Jackson, in the State of Missouri." (Italics ours.)

At the request of defendant the court gave three instructions, one that the burden of proof was on plaintiff; the other that defendants were not jointly liable and before the jury could return a verdict against the defendant,

the Missouri Pacific Railway Company, they must believe and find that the injury causing the death of plaintiff's jack was caused by the negligence of the defendant, Misouri Pacific Railway Company. The final instruction was to the effect that Monees & Sons were the agents of plaintiff for the purpose of signing the contract in evidence.

The defendant asked several other instructions, which were refused, the first based on the fact that the failure of plaintiff to give the notification within one day barred plaintiff; again, the limitation of loss, if any, was $100; and the final one, that under the contract it was mutually agreed that the plaintiff should assume all risk and expense of feeding, watering, bedding and otherwise caring for the live stock covered by the contract while in the cars, etc., and should load and unload the same at his own expense or risk, and that if the jury found from the evidence that the rate charged for the shipment of the jack from Smithton to Jackson was less than the rate charged for shipments transported at a carrier's risk, and that plaintiff or his agents failed and neglected to place some person in charge of the jack while it was being transported to care for and look after it while in the cars, and that the injury received by the jack was due to failure of plaintiff or his agents to place some person in charge of the jack to look after him and care for him while being transported between these stations, their verdict should be for defendant.

We think there was sufficient evidence to take this case to the jury and that the demurrers interposed by defendant were properly overruled. No attack was made on the petition by motion or otherwise. It counts on negligence of the carrier.

The burden was on plaintiff to make out a case of negligence against the carrier and so the court instructed the jury at the instance of plaintiff. We see no error in the first and second instructions.

It is objected by counsel for appellant that the court erred in the third instruction given at the instance of

plaintiff, in telling the jury that if they found that the jack was sound when shipped but was injured when he arrived, they might take that fact into consideration *"with all other facts and circumstances in evidence."* The error assigned is to the conclusion of these underscored words. We do not think that this is error. In addition to the fact in evidence as to the condition in which the jack arrived at the point of destination, the jury had before them the testimony of plaintiff and the veterinaries as to the nature of his injuries, efforts made to bring him back into condition, his conduct from the time he was delivered to plaintiff until he died, and the direct cause of his death. These were all matters for the consideration of the jury. In any event, the insertion of these words in the instruction, if error, was harmless. These were all facts from which negligence may be inferred. [See Witting v. St. Louis & San Francisco Ry Co., 101 Mo. 631, 14 S. W. 743; Cunningham v. Wabash R. Co., 167 Mo. App. 273, l. c. 282, 149 S. W. 1151; Libby v. St. Louis, I. Mt. & Southern R. Co., 137 Mo. App. 276; 117 S. W. 659; Brockserman v. St. Louis & Hannibal R. Co., 169 Mo. App. 168, 152 S. W. 389, and Robinson v. Bush, 109 Mo. App. 184 l. c. 196, 200 S. W. 757. See, also, Winslow v. Chicago & A. R. Co., 170 Mo. App. 617, l. c. 623, 157 S. W. 96.]

The provision in the contract requiring a notice in writing, is a valid provision in contracts for intrastate carriage, if supported by a good and valid consideration, and so our Supreme Court held in George v. Chicago, R. I. & Pac. R. Co., 214 Mo. 551, 113 S. W. 1099. In that case, as in Kellerman v. Kansas City, St. J. & C. B. R. Co., 136 Mo. 177, 34 S. W. 41; 37 S. W. 828, the rate was held to be the full tariff rate.

In the case at bar the rate charged is set out and it is distinctly set out that this is a reduced rate. That is set out in the preliminary clause and is repeated in the body of the contract. Plaintiff himself introduced this contract in evidence.

In Botts v. St. Louis & Hannibal R. Co., 191 Mo. App. 676, l. c. 683, 177 S. W. 746, it is said:

"But it is argued that, though there is no direct evidence of a reduced rate or other independent consideration, such sufficiently appears by the recital in the contract itself, in view of the fact that there is no evidence to the contrary. It is well settled that a recital contained in the shipping contract, to the effect that the shipment is made under the lesser of two rates which are held out to the public, will, in the absence of evdence to the contrary, be regarded as a sufficient prima-facie showing conecrning the matter of a reduced rate of independent consideration for limitations upon the carrier's liability," citing cases. This case was taken to the Supreme Court on certiorari and the writ denied. So it is held in Mires v. St. Louis & S. F. R. Co., 134 Mo. App. 379, (l. c. 386, 114 S. W. 1052).

Here there is no pretense of any vidence on the part of plaintiff, to the effect that this was not a lower rate, nor does he pretend to claim ignorance of any of the terms and provisions of the contract, the claim of plaintiff being merely that that clause of the contract is void. No authority is cited in support of this claim and we know of none.

Before leaving this branch of the subject, the writer takes occasion to say that it is very peculiar that counsel trying these cases where the question of reduced rate is involved, put the court to the trouble of an analysis of the contract to arrive at the conclusion as to whether the rate is a reduced or full tariff rate when it is equally in the control of each of the parties to settle this mater by introducing at the trial proof of the regular tariff rate and so to determine whether the recital in the contract, that it is a reduced rate, is true or a mere pretense.

All this argument as to whether this is a reduced rate or not is hardly material here. Assuming that the rate charged was a reduced rate, and that as part of the contract it was required that written notice be served on the agent of the carrier within one day after delivery of the

freight in order to fix liability on the carrier, it is clear that this requirement of the contract was in fact met by actual notice and knowledge on the part of the agent and was acted on by the agent at the point of delivery. He not only had actual knowledge of the fact that the jack was received in a damaged condition, but noted that fact on the receipt. He saw the jack limping when it was brought out of the car and driven in front of the station, put it in the control of plaintiff and suggested that a veterinary he named be sent for to look after the jack. This was actual notice and consent for plaintiff to receive and care for the jack. In our judgment, a written notice was unnecessary and, on the facts here, was waived. Surely on the facts here it could have served no good purpose. It is generally argued in these cases that prompt notice should be given of a claim for injury, in order that the carrier, if desired, can investigate the matter and separate the animal or article so that it can be held for its inspection. That a provision of this kind for notice can be waived, has been held in many cases. [Richardson v. Chicago & A. R. Co., 149 Mo. 311, 50 S. W. 782; Ward v. Missouri Pac. R. Co., 158 Mo. 226, 58 S. W. 28.] Here the agent, having the fact of the injury called to his attention, advised and suggested that the jack be looked after by a veterinary; even suggested the name of veterinary; told plaintiff to take charge of the jack; presumably knew where it was in charge of plaintiff. So written notice, we repeat, would have been superfluous. What the extent of the damage or injury then was, no one knew or could know. That could only be determined later. In the Ward Case, supra, it is said (l. c. 238):

"Written notice of a claim for damages could have in nowise aided defendant in the matter of making an estimate of the true value of the things lost, or have in any way prevented an over or fraudulent valuation being placed upon the goods by plaintiff." [See, also, Hancock v. Chicago & A. R. Co., 131 Mo. App. 401, l. c. 405, 111 S. W. 519; Kolkmeyer v. Chicago & A. R. Co., 192 Mo. App. 188, l. c. 193, 182 S. W. 794; Funsten Dried Fruit

& Nut Co. v. Toledo, St. L. & W. R. Co., 163 Mo. App. 426, 143 S. W. 839.]

In many cases under insurance policies like clauses as to notice, and limiting the power of agents to waive conditions, have been held by our court as unenforceable or subject to waiver. So we hold that under the facts in this case written notice within a day was unnecessary, in view of the fact that the agent himself had knowledge of the injured condition in which the jack had been delivered to the consignee and put it in care of plaintiff. Furthermore, at that time it was impossible for anybody to tell the result of the injuries which this jack had received. That was not known until the animal died, and promptly on death occurring plaintiff served his notice and made his demand in writing. On these grounds we hold that the defendant had apt and prompt notice of the damaged condition of the jack.

But it is claimed by learned counsel for appellant that the instruction asked by them, limiting plaintiff's recovery, if he recovered, to $100, should have been given, and it is claimed that this is a valid limitation of the amount of the liability. In support of this learned counsel for appellant cite us to Harvey v. Terre Haute & Indianapolis R. Co., 74 Mo. 538; McFadden v. Missouri Pac. R. Co., 92 Mo. 343, 4 S. W. 689; Kellerman v. Kansas City, St. J. & C. B. R. Co., 136 Mo. 177, 34 S. W. 41; 37 S. W. 828; Bowring v. Wabash Ry. Co., 77 Mo. App. 250; Shelton v. St. Louis & S. F. R. Co., 131 Mo. App. 561, 110 S. W. 627; Besheer v. St. Louis & S. F. R. Co., 151 Mo. App. 80, 131 S. W. 767.

In the case at bar the clause relied on as fixing a limit to the amount of recovery in case of loss at $100 for each jack reads as follows:

"Sixth. That in case of total loss of any of the live stock covered by this contract, from any cause for which the first party will be liable, payment will be made therefor on the basis of the actual cash value at the time and place of shipment, but in no case to exceed $100 for each . . . jack. . . . In case of injury or partial loss,

the amount of damage claimed shall not exceed the same proportions.''

It will be noted that this clause does not assume to fix the value of the jack, but seeks to limit the carrier's liability in amount, even if the loss is from its own negligence. When we turn to the cases relied upon by learned counsel for appellant in support of the efficacy of this stipulation, and decided by our Supreme Court, we do not find that any of them cover this case.

In the Harvey Case it is said, beginning at page 545:

''This court has repeatedly held that public policy will not permit a common carrier to contract for exemption from liability on account of the negligence of itself or its servants. The plaintiff contends that it is as much against the policy of the law to permit the carrier to limit its liability to a part of the loss, as it would be to permit it to stipulate against the entire loss. We do not regard a contract limiting a right of recovery to a sum expressly agreed upon by the parties as representing the true value of the property shipped, as a contract, in any degree exempting the carrier from the consequences of its own negligence. Such a contract fairly entered into leaves the carrier responsible for its negligence, and simply fixes the rate of freight and liquidates the damages. This we think it is competent for the carrier to do. And where the reduced value is voluntarily fixed by the shipper, with a view of obtaining a low rate of freight, without any knowledge on the part of the carrier that the property was of greater value, it would be a fraud upon the carrier to permit the shipper to recover a greater sum than fixed by him.''

In the McFadden Case, supra, it is said, commencing at page 348:

''But the stipulation in the contract of shipment, most relied on for a reversal of the judgment, is the one declaring the company should not be liable for more than $100 per head for the mules. Such a stipulation, it is claimed, is valid and binding, and does not contravene the rule which forbids the carrier to stipulate against his own

negligence. Numerous decisions sustain such stipulations, when fairly made, and where the parties agree on a fixed valuation of the property, and a special and reduced rate of freight is given and received, based upon the condition that the carrier assumes liability, only to the extent of the agreed value of the property. [Hart v. Railroad, 112 U. S. 331, and cases cited.]"

The court further proceeds in that case (1. c. 349) to say that even under the rule above declared "provisions employed and resorted to by common carriers to restrict their liability, are to be tested by their fairness, justice and reasonableness."

In the Kellerman Case, supra, the condition in the contract of shipment, as set out on page 184, as far as this point is concerned, is thus:

"It being hereby expressly agreed that the value of said live stock does not exceed the following valuation: Each horse (gelding or mare) or pony, mule, stallion or jack, $100."

Referring to this it is said by our Supreme Court (1. c. 190):

"That a carrier may, by special or express contract, fairly and understandingly made, limit his common-law liability and the shipper release the carrier from its obligation as insurer of his property is well settled law; but it is equally well settled that the carrier can not by any kind of agreement or contract exempt itself from losses accruing by reason of its own negligence.

"The defendant could not have, by any sort of contract, limited its liability against its own negligence in the transportation of the bull, but it does not follow that it could not, by contract fairly entered into, for a valuable consideration, limit the amount of damages to be paid by it in consequence of any loss which the owners might sustain by reason of loss of, or injury to, the animal by the carrier's negligence.

"It is difficult to see how a contract, by which it is expressly agreed that the value of the animal shipped does not exceed a certain sum, can in case of its injury,

loss or death, by reason of the negligence of the carrier, be construed as a contract exempting the carrier from its common-law liability for damages on account of its own negligence."

These are the cases from our Supreme Court cited by learned counsel for appellant. We do not quote the opinions cited from the Courts of Appeals as, of course they follow the Supreme Court.

We refer also to the leading case of Richardson v. Chicago & A. R. Co., 149 Mo. 311, 50 S. W. 782. In that case the stipulation in the contract was as set out on page 318:

"It is understood and agreed that the stock shipped under this contract is transported at the above rates upon the representations of the second party that its value does not exceed $100 for each horse or mule, . . . and that the first party shall not be liable for loss or damage to said stock in excess of these sums, nor for any sum in excess of their cash value at the time and place of shipment."

So it will be seen that in all of these cases there was an express agreement upon the amount of the value of the animal between the parties, that is between the shipper and the carrier. In the case at bar there is no such stipulation but a mere statement on the part of the carrier that in case of loss of a jack, or damage to it, the amount of recovery should not exceed $100. This is no agreement between the parties as to the value of the jack, but a mere arbitrary restriction imposed by the carrier for its own benefit. To exempt a carrier from its common-law liability for its own negligence certainly requires some positive and distinct contract on the part of both carrier and shipper as to the value of the animal to be transported; something more than a mere restriction or reservation by the carrier as to the amount of damage it will pay, and it is not to be implied or imposed by mere inference.

In every one of the cases relied upon by learned counsel for appellant the parties had expressly agreed

upon the value of the article or animal to be transported. The rate charged was fixed on this valuation as it appeared, and on such facts our Supreme Court in the cases cited has sustained the limitation. But we have found no cases in our State in which it has been held that without some such express agreement between the parties to the contract as to the value of the article, that any such arbitrary stipulation on the part of the carrier itself, imposed by it, not as the measure of the value of the animal, but on its arbitrary determination of what damage it shall pay, has been sustained. In fact we find no such point ever directly considered or determined by our Supreme Court. The intimation, particularly that by Judge HOUGH, in Harvey v. Terre Haute & Indianapolis R. Co., supra, is to the effect that mere restriction is an attempt to limit liability for negligence of the carrier, and is not to be sustained.

In 4 R. C. L., title "Carriers," par. 246, pp. 788, 789, and following, it seems to us that the true doctrine is stated as follows:

"Mere arbitrary limitations or stipulations are not upheld. The line of distinction seems to lie between those stipulations the object of which is to secure a fair and reasonable value on which to base the terms of the contract of shipment, and those the purpose of which is merely to place a limit on the amount for which the carrier shall be liable. The former are reasonable and will be sustained. The latter are mere attempts on the part of the carrier to limit his liability for losses arising through his own negligence, and as to losses so caused are adjudged unreasonable and not binding on the shipper."

Many authorities are cited in support of this proposition and it seems to us sound. If a mere arbitrary attempt at limitation of the amount of damage, as here presented, is to be held as exempting the carrier from responding in full for damages caused by its own negligence, the carrier might as well have inserted in this contract that in case of loss the amount of damage was

limited to one dollar. If it has the right to put it at
$100 in this arbitrary manner and without any agreement
between it and the shipper as to what the value of the
animal is, it can just as well limit that value to one dol-
lar as to $100. In fact, as here written, this provision is an
attempt at the entire exclusion and exculpation of the
carrier from its liability for actual damage caused by
its own negligence. We do not think that the limitation
is proper or lawful, as based on any consideration what-
ever, or covered by the reduced freight rate, but a mere
arbitrary exaction or imposition of terms by the carrier
itself, and in this case we hold it was void and that the
instruction asked by counsel for appellant, restricting
the damage to the amount of $100, was properly refused.

Some point is made by learned counsel for plaintiff
on the clause requiring the shipper to accompany and
take care of the stock while in transit. It appears that
he did not do this. We are unable to see, however, in the
absence of any showing, how that can be held to have ab-
solved the carrier from liability in the transportation of
the jack.

Finding no reversible eror, the judgment of the cir-
cuit court is affirmed.

*Allen* and *Becker, JJ.,* concur.