ROBERT A. LONG, SALLIE A. ELLIS and FRED F. BANNISTER, Governing Trustees, etc., Respondents, v. AMERICAN RAILWAY EXPRESS COMPANY, Appellant.*

Kansas City Court of Appeals. May 25, 1925.

1. **CARRIERS: In Action for Damages for Death of Livestock While in Custody of Carrier During Shipment, Not Necessary for Shipper, Under General Allegation of Negligence, to Prove Specific Acts of Negligence.** Where there is an accompanied interstate or intrastate shipment of livestock and death of animal occurs while in custody of carrier, it is not necessary for shipper to prove, under a general allegation of negligence, the specific acts of negligence on the part of the carrier, but it is sufficient if there is substantial evidence from which a reasonable inference of negligence may be drawn.

2. ———: **Negligence: In Action for Damages for Death of Cow During Shipment, Evidence Held Sufficient to Take Case to Jury.** In action for damages for death of Jersey cow, caused by negligence of carrier while in its custody during shipment, evidence that cow was seriously ill from car sickness and not given proper treatment *held* sufficient to take case to jury.

3. **INSTRUCTIONS: Instruction as to Negligence of Carrier in Failing to Properly Care For Sick and Injured Cow Held Supported by the**

**Evidence.** An instruction to find for plaintiff if cow's death resulted from injury and lack of proper care on part of carrier, *held* supported by evidence to the effect that animal was not removed from train immediately after she became sick and that injury might have occurred as result of careless handling.

4. ——: **Refusal of Instructions, Covered by Given Instructions held Proper.** Refusal of defendant's instructions *held* proper, where fully covered in its given instructions.

5. **CARRIERS: Testimony That Charges for Treatment of Cow Were Never Presented to Shipper, Held Properly Admitted.** Testimony that charges for treatment of cow were never presented to plaintiff *held* admissible for purpose of contradicting defendant's evidence tending to show cow was properly treated and as justifying implication that defendant may have concluded that such a charge was not valid.

---

*Corpus Juris-Cyc. References; Carriers, 10 C. J., p. 360, n. 27; p. 385, n. 11; p. 392, n. 50; p. 393, n. 60. Trial, 38 Cyc. p. 1711, n. 19.

Appeal from the Circuit Court of Jackson County.—*Hon. Charles R. Pence*, Judge.

AFFIRMED.

*Baker, Botts, Parker & Garwood, Jesse Andrews, Carl D. Matz, Flavel Robertson* and *Raymond E. Draper* for respondents.

*Lathrop, Morrow, Fox & Moore, George J. Mersereau* and *Winston H. Woodson* for appellant.

ARNOLD, J.—This is an action in damages on account of the death and loss of a Jersey cow which plaintiffs delivered to defendant at Bangor, Me., on August 29, 1921, consigned to themselves at Lees Summit, Mo.

The petition is in two counts, the first based upon defendant's common-law liability as a common carrier and the second upon negligence. At the close of the evidence the motion of defendant to require plaintiffs to elect upon which count they would go to the jury was

sustained, and plaintiffs elected to stand upon the second, or negligence count, and dismissed as to the other. The part of the second count upon which the case was submitted and the only part which we need consider is as follows:

"That on the 29th day of August, 1921, they caused to be delivered to defendant and defendant received as such common carrier at its office in Bangor, Maine, one cow in good order and condition, in consideration of charges to be paid to it in accordance with defendant's tariff of charges, with all due care and diligence and without fault on the part of its servants and employees safely to be transported to Lees Summit, Missouri, and there delivered to plaintiffs in as good condition as when received. But that the defendant in total disregard of its duty as a common carrier so negligently conducted itself in the premises that said cow was bruised and injured and died, while in the possession of the defendant, as a result of said injuries."

The amended answer to the petition is, first, a general denial, and as further answer alleges that the shipment mentioned in the petition was an interstate shipment; that at the time of said shipment defendant had in effect two tariffs or rates for transportation of live-stock of the kind and character of the shipment in question; that one of said tariff rates was in the regular tariff rate for the transportation of livestock of the kind and character of the shipment mentioned in the petition; and the other was a tariff or rate less than the regular tariff rate of which shippers of livestock of the kind and character mentioned in the petition, could avail themselves, by agreement as a consideration therefor to a limitation of liability of the carrier; that plaintiffs availed themselves of this last-named special reduced rate; and that there was a contract in respect to the shipment herein, entered into between the parties, which was a uniform contract for the transportation of animals

other than ordinary livestock. That section 5 of said contract provides, as follows:

" 'The shipper agrees that the express company shall not be liable for the conduct or acts of the animals to themselves or to each other, such as biting, kicking, goring or smothering nor for loss or damage arising from the condition of the animals themselves or which result from their nature or propensities, which risks are assumed by the shipper.'

"Section 8 thereof is as follows: 'The shipper further agrees that as a condition precedent to recovery hereunder for loss or injury or damage to or delay in delivery of this shipment, such loss, injury, damage or delay shall be proved by the shipper to have been caused by negligence of the carrier    . . .' "

Section 10 is also pleaded in full and is as follows: "Claims for loss, damage or delay must be filed with the carrier at the point of delivery or at the point of origin within four months after delivery, or, in case of failure to deliver, after a reasonable time for delivery has elapsed, unless the loss, damage or injury was due to delay or damage while being loaded or unloaded or damaged in transit by carelessness or negligence of the company. Suits must be instituted within two years after the delivery, or, in case of failure to deliver, after a reasonable time for delivery has expired. Unless claims are so filed and suits so brought the carrier shall not be liable."

The answer further alleges that the damages, if any, sustained by plaintiff were not due to the acts or conduct of defendant in the manner and way of transporting said animal, but were due to the conduct or acts of said animal arising from the condition of the animal and from its nature and natural propensities, all of which risks and damages, if any, on account thereof the shippers assumed. The answer further pleads that no sufficient legal claim was filed by plaintiffs nor was their suit instituted

within the time required by the contract of shipment. The reply is a general denial.

Upon the pleadings thus made the cause was tried to a jury resulting in a verdict and judgment for plaintiffs in the sum of $650. Motions for new trial and in arrest being ineffectual, defendant appeals.

The facts disclosed by the evidence are as follows: Mr. C. J. Tucker, manager of plaintiffs' farm near Lees Summit, Mo., known as "Longview Farm," authorized Mr. Tom Dempsey of Westerville, O., who was conducting a cattle sale at Bangor, Me., to purchase the cow in question and to ship her by express to plaintiffs at Lees Summit, and to declare her value at the price paid for her, to-wit, $1100. The cow was purchased accordingly on August 18, 1921. She was seven years of age, coming eight the following November, a Jersey known as "Fairy Boy's Jennie," and a large milk producer having an unusually large udder. She was dry at the time but was due to freshen within two or three weeks.

On August 29th, she was crated by plaintiffs' agent at the farm where purchased and taken in a truck to the railroad station at Bangor and there delivered to defendant and accepted by it for carriage to Lees Summit, Mo., under the terms of the contract pleaded in the amended answer.

The testimony shows that at the time the cow was delivered to the express company she was in good physical condition, considering, of course, her condition of pregnancy. The evidence further shows that the cow was never delivered at Lees Summit and at the trial defendant admitted the cow died at Cleveland, Ohio, during the course of transportation. Plaintiff's evidence showed delivery of the cow in good condition to defendant at Bangor, Me., its value and the failure of defendant to deliver her at destination in like good condition. At this point plaintiffs rested their case and defendant offered, and the court overruled, a demurrer to plaintiffs' evidence.

Defendant then read in evidence the deposition of one Peter J. Sticht of Buffalo N. Y., who, it appears, was in the employ of defendant as a livestock man at its Green Street Terminal in Buffalo at the time the cow came through there. This witness identified the defendant's records covering a period from June 3 to October 21, 1921, showing the arrival and feeding of animals at that station. Relative to the cow in question his testimony on cross-examination is as follows:

"Q. Do you remember this particular cow and this particular shipment? A. No, I couldn't give a description. You mean how she was spotted, and so on?

"Q. Yes. A. No.

"Q. Do you remember the actual taking care of this particular cow in this shipment? A. Yes.

"Q. Other than by reference to records? A. I couldn't give no description of the cow, whether she was a Jersey, Durham or Holstein.

"Q. I don't mean description of the cow. I mean do you remember actually this shipment other than by a reference to a record here that you made. A. I couldn't answer that. I am only going by the record that I took care of that cow.

"Q. That is what I mean. In other words, you would have to refer to the records, or you would not remember that there was any shipment? A. No; because there is hundreds go through every week."

This witness also testified that he made no examination of the cow for injuries; that she was not removed from the car or crate while he was on duty; and that other men were on duty during the time the cow was at the Buffalo Terminal.

Testimony of the express messengers in whose car the cow was shipped from Buffalo to Cleveland was introduced, the first being that of Wm. G. Hopkins who was on duty on or about August 30, 1921, on the car in which the cow was being shipped from Buffalo to Ashtabula, Ohio. This witness testified the cow was lying down resting but was up and drank water at Erie, Pa.

At Ashtabula Hopkins was relieved by messenger Morris Levine who rode the express car to Cleveland. He testified that when he took the car there was a cow therein destined to some place in Kansas as he recalled. She was lying down at Ashtabula but he made no examination and did not know whether there was anything the matter with her or not; that he paid no particular attention to her as he had work to do; that on arrival at Cleveland, August 31st, about 5 or 6 o'clock in the morning the cow was still lying down and he at once communicated the fact to defendant's foreman, Richard Dorr, who, after his attention was called to the situation, said he would have a man take care of the animal.

It appears that one J. B. Considine, a veterinarian, of Cleveland, was called to the station by one of defendant's agents to attend the cow. Considine testified that he responded to the call between 7 and 7:30 that morning and found the cow down in her crate and on examination found her in a state of coma; that she was in no condition to continue the journey and ordered her sent to a hospital. The cow was placed in an ambulance and taken to the hospital where examinatiion showed, in the opinion of the witness, that the cow was suffering from car sickness. At this time it was discovered there was a severe bruise on a part of her udder. He further stated that the continued to suffer from car sickness some thirty-six hours after her arrival at the hospital so that she was unable to stand, and that she died some hours later from blood poisoning which developed from the bruised udder.

Considine further testified that he did not see the cow removed from the crate and did not accompany her to the hospital, and that the udder was not infected when he first saw it. He also stated that the proper treatment of a case of car sickness in an animal is to remove it from the train as soon as possible. He was corroborated in this opinion by another veterinarian, C. W. Eddy, whose deposition was read in evidence. He also testified as to the car sickness and bruised udder, and stated

that at his suggestion the udder was inflated to relieve the car sickness; that the proper treatment for car sickness is to remove the animal from the train, place her in as comfortable quarters as possible and administer stimulants; that hypodermics should be given and the udder drained and inflated with oxygen and air.

Defendant's yard foreman at Cleveland, Dorr, testified that his attention was called to the cow by the messenger Levine who stated that "he had a cow in a crate in the car that appeared to be sick, and told me to look at it;" that he tried to get the cow up but without success and that he then placed the crate on the platform. E. G. Senter, defendant's agent at the 26th street depot in Cleveland testified that his attention was called to the cow in the crate; that the crate was constructed roomy, and that it was evident to him that the shippers of the cows had made a practice of shipping a good deal of livestock; that the crate was well built, had a smooth bottom, boards running lengthwise of the crate, slats nailed to the bottom, upright and then braced across the top. He gave instructions for opening the crate and found the cow was very "dopy."

This witness testified as to the manner in which the cow was removed from defendant's platform to the ambulance, to the effect that the ambulance having a sort of stone boat false bottom, was placed alongside the platform of the crate in which the cow was lying, to the animal's back, and the men got hold of her legs and lowered her on the ambulance, and then this false bottom was pulled on by a windlass. Witness was present when this was done and saw the cow was very quiet. He had seen many cows and horses car sick. He said the cow's eyes were open all the time, that she would not even switch the flies off of her; that a fly walked across her eye and she paid no attention to it. He then was asked "Q. She had evidently been car sick a good while? A. That is quite a ways—from Maine."

One Herbert M. Tucker of Yarmouthville, Me., who had previously owned the cow testified that the animal

was used to traveling in railroad cars, having made several trips around the country attending fairs; that he saw her at the time of the sale and that she was then in as good condition as he had ever seen her. Witness gave it as his opinion that a cow due to freshen in some twenty days was not in condition to ship, but that he had shipped them under similar conditions for short distances but had no experience in shipping them for long distances.

There was no evidence introduced tending to show that this shipment was made at a reduced rate by reason of special contract provisions. Nor is there any evidence of record as to the condition of the cow on the part of the trip from Bangor, Me., to Buffalo, N. Y.

In rebuttal plaintiffs placed on the stand two veterinarians who, after qualifying as experts, testified to the effect that it is usual and customary to ship cows just prior to their prospective freshening; that car sickness usually would occur immediately after the loading or moving of an animal.

Defendant interposed a demurrer to all of the evidence which the court overruled. The case was submitted and there was a verdict and judgment as above indicated.

Under points and authorities, defendant argues that the demurrer at the close of all the evidence should have been sustained. That the shipment being interstate, the rights and liabilities of the parties depend upon the Acts of Congress, the livestock contract under which the cow was moved, and the common-law principles accepted and applied in the Federal court; and that under the Federal statutes and decisions, the burden was on plaintiffs to prove negligence.

That the Federal rule applies is not disputed by plaintiffs, but they insist that under said rule it is not necessary, under a general allegation of negligence for the shipper to prove specific acts of negligence; but that it is sufficient if there is shown evidence from which a reasonable inference of negligence may ·be drawn; and

that this is true even when the shipment is governed by a contract, such as in the case at bar, providing there should be no liability except for negligence. It is on this point that the parties hereto disagree, and the result of this appeal will be largely governed by the proper construction of the law on this point. That the Federal rule governs in this case is agreed. Our efforts therefore need be directed only to the question of whether, under said rule, plaintiff is required to prove actual negligence of defendant.

We deem it unnecessary to enter into an extended discussion of this question, for it seems to be well settled that where there is an unaccompanied shipment of livestock, as in this case, and the death of the animal occurs while in the custody of the carrier, it is not necessary for the shipper to prove, under a general allegation of negligence, the specific acts of negligence on the part of the carrier, but it is sufficient if there is substantial evidence from which a reasonable inference of negligence may be drawn. And this is true in interstate as well as intrastate shipments, the former, of course, being governed by the Federal rule, and may also be governed by a contract as in this case, providing there shall be no liability on the part of the carrier except for negligence.

In the case of Sullivan v. Am. Ry. Express Co., 211 Mo. App. 123, 245 S. W. 375, a situation arose almost identical with the one before us, wherein the plaintiff sought to recover for the value of a hog shipped from Martinsburg, Mo., to Bartlett, Texas. The evidence showed that the hog was properly crated, that it was delivered to defendant in good condition and when it arrived at destination it was dead. The evidence showed there was no reduced rate to the plaintiff and that the regular approved rate was charged. As in the case at bar, defendant's appeal was based upon the contention that the carrier was not an insurer of the freight, but was only liable for loss occasioned by its negligence.

The St. Louis Court of Appeals in that case held that at common law, in the absence of a special contract, the liability of the carrier was the same with respect to livestock as to inanimate freight, with certain exceptions. The exceptions, with respect to livestock, being that the carrier is not liable if its failure to deliver in good condition was due to the act of God or the public enemy or to the inherent vice or nature of the animal or its vicious propensities, or the fault of the shipper. In the case at bar there is no charge of vicious propensities of the cow but on the contrary the testimony shows she was most docile, gentle and quiet. It is said in the Sullivan case (211 Mo. App. l. c. 130):

"If the carrier seeks to relieve itself from liability by bringing itself within the exceptions above noted, the burden devolves upon it to do so. If the carrier produces evidence tending to bring it within any of these exceptions, then the duty would perhaps rest upon the plaintiff to come forward with evidence showing to the contrary. It would then be a question for the jury as to whether or not defendant had breached its common-law duty to deliver the livestock in a safe and sound condition."

The rule as to the carrier's liability in cases of this kind was stated in the following cases: Libby v. Railroad, 137 Mo. App. 276, 117 S. W. 659; Botts v. Railroad, 191 Mo. App. 676, 177 S. W. 476; Hartford Fire Insurance Co. v. Payne, 243 S. W. 357, 359; Morrow v. Wabash Ry. Co., 265 S. W. 851. The Federal rule in this respect is tersely stated in he case of Galveston, etc., Ry. Co. v. Wallace, 223 U. S. 481, l. c. 492, in discussing a case which arose under the Carmack Amendment, wherein the U. S. Supreme Court, speaking through Mr. Justice LAMAR, said:

"When the holders of the bill of lading proved the goods had not been delivered to the consignee, the presumption arose that they had been lost by reason of the negligence of the carrier or its agents. The burden of

proof that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract was then cast upon the carrier. The plaintiffs were not obliged to prove both their case and to disprove the existence of a defense. The carrier and its agents having received possession of the goods, were charged with the duty of delivering them, or explaining why that had not been done. This must be so, because carriers not only have better means, but often the only means, of making such proof. If the failure to deliver was due to the act of God, the public enemy or some cause against which it might lawfully contract, it was for the carrier to bring itself within exceptions.''

From the above citations it must be held as to the sufficiency of the evidence to take the case to the jury in a case such as the one at bar, the rule in this State on intrastate shipments is the same as the Federal rule in interstate shipments. A clear statement of the rule is found in Byrum v. Railroad Co., 226 S. W. 91 (Mo. App.) where it is said:

''The burden of proof was upon the plaintiff to show that the injuries were not inflicted by the vice of the animal or its inherent propensities and to show that the injury was caused through some human agency. However, very slight proof of negligence is sufficient to transfer the burden to the carrier, and this negligence may be established from collateral facts and circumstances affording a reasonable inference of negligence.''

This holding is not in conflict with section 8 of the shipping contract pleaded in the amended answer that ''the shipper agrees that as a condition precedent to recovery hereunder for loss or injury or damage to or delay in delivery of this shipment, such loss, injury, damage or delay shall be proved by the shipper to have been caused by negligence of the carrier . . .''

As is said in the Sullivan case, l. c. 132: ''The burden of proof is a matter of substance. While ordinarily the failure to admit the shipping contract in evidence would constitute reversible error, we do not think the

provision of the contract above referred to is a reasonable regulation which the defendant could enforce. And plaintiff having based his cause of action upon defendant's common-law liability as an insurer, the rejection of this contract, under all the facts of this case, would not constitute reversible error." [Citing Railroad v. Rankin, 242 U. S. 319 and Hartford Fire Ins. Co. v. Payne, 243 S. W. 357.]

Applying these rules to the facts in the case at bar, the solution of the question is not difficult. Briefly stated, the testimony shows that the cow was delivered to defendant in good condition; that on the journey, at Ashtabula, Ohio, she was found lying down; on arrival at Cleveland, she was ill and that within a few hours thereafter she died of blood poisoning from an infected udder. There is no positive testimony as to how the udder was bruised, but there is testimony that she was seriously ill from car sickness. There is no showing that there was any attempt made at Ashtabula to ascertain the exact condition of the cow, or from there to Cleveland, as to possible car sickness.

Defendant, in its effort to produce a plausible explanation for the bruised condition of the udder, suggests that in arising from her reclining posture in the crate she may have stepped upon the udder and bruised it. This, of course, is presented only as a possible theory as there is no evidence constituting it a fact. But the theory is denuded of its potency by the fact that the cow was car sick on her arrival at Cleveland, and the jury well may have concluded from this showing that she was reclining because of the car sickness and in arising, she bruised her udder. The testimony is undisputed that the proper treatment for car sickness is to remove the animal immediately from the train. We hold this was sufficient evidence to take the case to the jury, and there was therefore no error in the action of the trial court in submitting it to them.

It is charged the court erred in giving plaintiff's second instruction which reads as follows:

"The court instructs the jury that if the cow injured herself and the defendant could have prevented her death following from such injury by the use of reasonable care, but that the defendant failed to exercise reasonable care and the cow's death followed as a result of the injury and from the lack of reasonable and proper care on the part of the defendant, if you so find, then your verdict should be for the plaintiffs."

Defendant argues the instruction would be all right if there was any evidence to support it; that the evidence shows beyond dispute that as soon as the cow was found to be sick she was immediately taken off the train. We find there is sufficient evidence to the effect that the animal was not removed from the train immediately after she became sick, and that the injury might have occurred as the result of careless handling at the Cleveland Terminal. We hold the instruction proper.

Another charge of error is predicated upon the refusal of the court to give defendant's instructions G and I. The points intended to be covered by these instructions were fully covered in defendant's instruction C, and therefore the refusal to give them was proper. [Browning v. Express Company, 243 S. W. 190.]

Finally, it is insisted that the court erred in admitting in rebuttal, over defendant's objection, the testimony of C. J. Tucker, manager of plaintiffs' farm, as follows:

"Q. Mr. Tucker, were you ever presented with any charges for the treatment and the hospital bill for this cow?

"Mr. Mersereau: Object to that as wholly immaterial.

"The Court: Overruled.

"To which action, order and ruling of the court the defendant then and there duly excepted and still excepts.

"A. No, sir, I was not."

It is urged that this testimony was immaterial because it did not tend to prove or disprove any of the issues involved in this case. We think defendant's contention untenable. The testimony had developed the question as to the proper treatment of the cow. Defendant sought to show that the animal was properly treated. The testimony complained of doubtless was admitted for the purpose of contradicting defendant's evidence on this point. No account was rendered nor demand made by defendant for the services of the veterinarians, and it may be implied from this fact that defendant may have concluded that such a charge was not valid. On this theory we hold that the evidence complained of was properly for the consideration of the jury.

Failing to find reversible error of record, the judgment should be affirmed. It is so ordered.

*Bland, J.,* concurs; *Trimble, P. J.,* absent.